NEVA HAMILTON, VESTA HAMILTON, PANSY HAMILTON AND PARK HAMILTON, MINORS, BY ROSA HAMILTON, THEIR NEXT FRIEND; RALPH HAMILTON, WAYNE HAMILTON AND RAY HAMILTON, IN THEIR OWN RIGHT, *Appellants*, v. A. J. MORGAN, AS EXECUTOR UNDER THE INSTRUMENT OFFERED FOR PROBATE AS THE LAST WILL AND TESTAMENT OF BARTLETT HAMILTON, DECEASED, *Appellee*.

Division B.

Opinion Filed February 19, 1927.

1. Section 3592, Revised General Statutes of Florida, 1920 (not applicable to the homestead), in effect provides that every person of the age of twenty-one years and of sound mind shall have the power to dispose of his real or personal property of whatever kind he may be possessed by last will and testament in writing.

2. This Court is committed to the doctrine that wills so executed should be given effect unless it clearly appears that the free use and exercise of a "sound mind" by the testator in executing the will was in fact prevented by deception, undue influence or other means, or that the disposition of the property is contrary to law.

3. A "sound mind" as applied to the execution of a wlil, comprehends ability of the testator to mentally understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial benefit from the will, as well as a general understanding of the practical effect of the will as executed.

4. The free use and exercise of a "sound mind" in making a will may be prevented in many ways; but if a testator has a "sound mind" when he makes his will, its free use and exercise will be assumed until the contrary clearly appears.

5. A testator of sound mind has a perfect right to make an unjust and unnatural will, and may disinherit his children or others having a just claim on his bounty.

6. When a testator has reasonable grounds to dislike those nearest to him and has exercised his lawful right to disappoint them in the execution of his will, his conduct in doing so is not generally to be regarded as unreasonable in the sense of evidencing mental incapacity.

7. There is a well recognized distinction between testamentary power and testamentary capacity. Testamentary capacity goes to the ability to execute a will; but what passes under it is controlled by law. If the testator comprehends perfectly the condition of his property, his relation to those who would, should or might have been the objects of his bounty, the scope and effect of his will which comprehends sufficient active memory to collect voluntarily in his mind the complexities of the business to be transacted and keep them in mind long enough to perceive their relation to each other and to form a rational judgment in relation to them, he is said to have mental capacity.

8. The findings of fact by a Probate Judge upon conflicting evidence should ordinarily not be disturbed on appeal to the Circuit Court, where there is ample evidence to sustain the findings; yet where the Probate Judge misapprehended the legal effect of the evidence as an entirety, his finding

should not be sustained merely because there is evidence that is contradicted on which the findings may be predicated.

9. Undue influence justifying. the setting aside of a will, deed, or other contract must be such as to dethrone the free agency of the person making it and rendering his act the product of the will of another instead of his own. The character of the transaction, the mental condition of the person whose act is in question, and the relationship of the parties concerned to each other, are all elements that may be taken into consideration in applying the rule.

An Appeal from the Circuit Court for Hillsborough County; L. L. Parks, Judge.

Affirmed.

*Kelly, Sutton* and *Shaw,* for Appellants.

*Wm. M. Taliaferro, Taliaferro & Morris,* and *R. G. Tittsworth,* for Appellee.

TERRELL, J.—This suit was instituted pursuant to Section 3602, Revised General Statutes of Florida, 1920, for the purpose of contesting the probate of the will of Bartlett Hamilton, late of Plant City, Hillsborough County, Florida. The contestants are the seven children of the testator, four of whom are minors. A. J. Morgan, the executor appointed in the will, is named as defendant.

The testator executed his will December 2nd, 1921, devising one dollar each to his former wife and five older children, and one hundred dollars each to the two younger children. The bulk of the estate worth eight or nine thousond dollars after discharging all legal obligations he devised to his nephew, Lovell H. Harrell, and his executor, A. J. Morgan, to share equally.

Probate of the will is resisted on the ground of (1)

mental incapacity; (2) undue influence, and (3) illegal execution both as to real and personal estate.

Upon final hearing on the issues made and testimony duly taken the probate judge entered his order denying the probate of the will and allowing an attorney's fee of five hundred dollars and cost of the contest proceedings to be paid from the said estate. Pursuant to Section 2923, Revised General Statutes of Florida, 1920, appeal from the order of the Probate Court was prosecuted to the Circuit Court of Hillsborough County resulting in a final decree reversing the order of the Probate Court and remanding the cause with directions to dismiss the contest. The cause comes here on appeal from the final decree of the Circuit Court.

Section 3592, Revised General Statutes of Florida, 1920, (not applicable to the homestead) in effect provides that every person of the age of twenty-one years and of sound mind shall have the power to dispose of his real or personal property of whatever· kind he may be possessed by last will and testament in writing. This Court is committed to the doctrine that wills so executed should be given effect unless it clearly appears that the free use and exercise of a "sound mind" by the testator in executing the will was in fact prevented by deception, undue influence or other means, or that the disposition of the property is contrary to law; otherwise the right given by the statute to dispose of property by will would be thwarted. Sweetser v. Ladd, 52 Fla. 663, 41 South. Rep. 705; Newman v. Smith, 77 Fla. 633, 667 and 688, 82 South. Rep. 236.

A "sound mind," as applied to the execution of a will, comprehends ability of the testator to mentally understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial benefit from the

will, as well as a general understanding of the practical effect of the will as executed. The free use and exercise of a "sound mind" in making a will may be prevented in many ways; but if a testator has a "sound mind" when he makes his will, its free use and exrecise will be assumed until the contrary clearly appears. Newman v. Smith, *supra;* Delafield v. Parish, 25 N. Y. 9, 28 R. C. L., par. 35, page 86.

Bearing on the question of whether or not the testator was of sound mind and mentally capacitated to execute the will in question, the record discloses that he was married in 1896 to Rosa Hamilton, from which union came the contestants, whose ages ranged from about eight to twenty-six years, at the time this suit was brought. From his marriage to within a few weeks of his death Bartlett Hamilton constantly indulged his appetite for intoxicating liquors. He was divorced from Rosa Hamilton in February, 1920, and deeded her the place where they had made their home during their married life, and which was worth fifteen or eighteen thousand dollars. Family relations in the Hamilton home had long been turbulent and rent by domestic cyclones. Father and family appear to have become completely alienated and estranged, and sometime prior to the divorce he took up his residence at a rooming house in Plant City. He shifted about from pillar to post, and some time before his death he took up his residence with his nephew, Dr. Harrell, where he died of pellagra in April, 1924. He was an invalid for months prior to his death, but for all the record shows, with the exception of a short call from one of the older boys, none of the contestants went about him or administered to him in any way from the time he took up his residence in Plant City until his death, though they were living in three or four miles of him all this time.

In addition to the foregoing there was a great deal of expert testimony to the effect that pellagra had a tendency to debilitate and ultimately dethrone the mental faculties. Similar facts were proven with reference to one long addicted to the use of intoxicating liquors. A few witnesses testified that for some time prior to the testator's death his physical and mental condition was undermined and was not what it had been, but not one of them testified that this condition existed at the time the will was executed, and the expert testimony is far from convincing as to mental incapacity to make a will at any time.

It cannot be disputed that the will on its face is unnatural and unjust. It virtually disinherits the children of the testator and gives the major part of his estate to his brother-in-law and executor, Mr. A. J. Morgan, and his nephew, Dr. Harrell, but this of itself raises no presumpiton of mental incapacity. A testator of sound mind has a perfect right to make an unjust and unnatural will, and may disinherit his children or others having a just claim on his bounty. Newman v. Smith, *supra;* Addington v. Wilson, 5 Ind. 137, 61 Am. Dec. 81; Kaufman v. Caughman, 49 S. C. 159, 27 S. E. Rep. 16; Kerr v. Lunsford, 31 W. Va. 659, 9 S. E. Rep. 493, 2 L. R. A. 668; 28 R. C. L. 90. When a testator has reasonable grounds to dislike those nearest to him and has exercised his lawful right to disappoint them in the execution of his will, his conduct in doing so is not generally to be regarded as unreasonable in the sense of evidencing mental incapacity. Morgan v. Morgan, 30 App. Cas. (D. C.) 436, 13 Ann. Cas. 1037; 28 R. C. L. 90.

In the case at bar the evidence falls far short of showing mental incapacity on the part of the testator at the time the will was executed. On the other hand, it shows conclusively a deliberate purpose on the part of the testator, actuated by resentment rather than an impaired mind, to

disinherit the contestants who had become estranged from
and had neglected him, and to make the objects of his
bounty those who had consoled and comforted him in the
years of his decline and misfortune.   It may be that the
testator brought all his misfortune on himself, but he was
still the father of the contestants, and under the facts shown
here, having deeded the mother the home place, it was to
say the least not unnatural that he should remember those
who had befriended him in his loneliness.

There is a well-recognized distinction between testamen-
tary power and testamentary capacity.   Testamentary
capacity goes to the ability to execute a will; but what
passes under it is controlled by law.   If the testator com-
prehends perfectly the condition of his property, his rela-
tion to those who would, should or might have been the
objects of his bounty, the scope and effect of his will which
comprehends sufficient active memory to collect voluntarily
in his mind the complexities of the business to be transacted
and keep them in mind long enough to perceive their rela-
tion to each other and to form a rational judgment in rela-
tion to them he is said to have mental capacity.   Newman
v. Smith, *supra;* 28 R. C. L. 86.   The estate here disposed
of was not involved; it consisted of forty acres of land and
some personal property in the way of promissory notes and
money in bank.   We think the testator met the test.

In this holding we are mindful of the rule approved by
this Court to the effect that the findings of fact by a Pro-
bate Judge upon conflicting evidence should ordinarily not
be disturbed on appeal to the Circuit Court, where there
is ample evidence to sustain the finding; yet where the
Probate Judge misapprehended the legal effect of the evi-
dence as an entirety, his finding should not be sustained
merely because there is evidence that is contradicted on

which the finding may be predicated. Newman v. Smith, *supra.*

We have examined the evidence carefully and our conclusion is that on the issues made the Probate Judge misapprehended its legal effect. The decided weight of the evidence supports sanity at the time the will was executed. It is true there was some evidence supporting mental and physical decline in the late years of the testator's life, but none of it goes to the date of the execution of the will, and as for the testimony of experts it was largely hypothetical, and while it was to the effect that pellagra and the long use of intoxicating liquors had a tendency to debilitate the mentality, it was also conclusive to the effect that the extent of debilitated mentality must be determined by an examination of the individual case, and no such examination and pronouncement was ever made on the testator.

It is next contended that the will in question was procured by undue influence. It has been held that an attack on a will on the ground of undue influence concedes the existence of testamentary capacity. Kennedy v. Dickey, 100 Md. 152, 59 Atl. Rep. 661, 68 L. R. A. 317. In Peacock v. DuBois, — Fla. —, 105 South. Rep. 321, this Court in the following language defined the elements constituting undue influence in a case of this kind:

"The rule seems to be well settled that undue influence, justifying the setting aside of will, deed, or other contract must be such as to dethrone the free agency of the person making it and rendering his act the product of the will of another instead of his own. The character of the transaction, the mental condition of the person whose act is in question, and the relationship of the parties concerned to each other, are all elements that may be taken into consideration in applying the rule."

The record shows the testator to have been a man of good

average mentality and business ability, and falls far short of showing that the will was procured through undue influence.

We are further of the opinion that the law was fully complied with in the matter of executing the will, that the testator had full consciousness of the effect of the act he was engaged in, of the kind and property he possessed, of the persons he desired to participate in his estate and the effect of his disposition on them.

The decree of the Chancellor reversing the order of the Probate Court of Hillsborough County is therefore affirmed.

Affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.