MILDRED MARSTON and HAROLD P. MARSTON, Petitioners to revoke probate, v. FRANK G. CHURCHILL, Executor of the last will and testament of Grace Haynes Rogers, Deceased.

187 So. 762.
Opinion Filed April 4, 1939.

*Layton & Gray* and *Frank R. Greene,* for Appellants; *W. E. Smith,* for Appellee.

THOMAS, J.—This controversy originated in the County Judge's Court of Marion County, Florida, where an effort was made by appellants to have the will of Grace Haynes Rogers revoked upon the grounds that she was mentally incompetent when the will was executed, October 30, 1934, and that it was the result of undue influence on the part of the principal beneficiary.

The County Judge heard the witnesses, considered the evidence in the case and decided the issues against the contestants. An appeal was taken to the Circuit Court from this order of the County Judge declaring the will valid, and the appellate court affirmed the ruling. We are now asked to review the matter, and it appears that but the two questions need answers to dispose of it finally, namely, was testatrix unduly influenced, and was she mentally incapacitated.

At the outset, it seems fitting to review the rules heretofore enunciated by which we should weigh the evidence, and by which it should have been appraised by the County and Circuit Judges.

It was announced in Theus v. Theus, 119 Fla. 190, 161 South. Rep. 76, that in an appeal from an order of the Circuit Court, affirming a judgment of the county judge's court, the burden of showing error was assumed by appellant. See also Gardiner v. Goertner, 110 Fla. 377, 149 South. Rep. 186.

Influence to be of that degree termed "undue" must be so strong that the will of the dominant party is substituted for that of the victim. Peacock v. DuBois, 90 Fla. 162, 105 South. Rep. 321. See also in re Starr's Estate, 125 Fla. 536, 170 South. Rep. 620; Gardiner v. Goertner, supra.

In Theus v. Theus, supra, it was said no presumption of invalidity attaches to a will simply because the sole ben-

eficiary requested and directed the drawing of the will, although such circumstances would "excite the court to suspicious scrutiny, the suspicion being greater or less in proportion to other circumstances." 161 South. Rep. text 77.

In *In re* Starr's Estate, *supra,* observations were given by the court on certain aspects of the litigation which are the same as those in the instant case. Kindness or solicitude were said not to be evidence of undue influence and it was held that a confidential relation between testator and beneficiary would not alone raise a presumption of undue influence.

It is the doctrine of this Court that persons may not be defeated in their right to dispose of property by will because of undue influence unless that element is clearly apparent. Hamilton v. Morgan, 93 Fla. 311, 112 South. Rep. 80.

It would require a strained construction in favor of appellants to arrive at a conclusion that the will of the principal beneficiary was substituted for that of the testatrix in the disposition of her property. This is a consideration to which appellants are not entitled. They have undertaken the burden of showing the former decisions to have been erroneous and in this they have failed.

Testatrix was a woman of advanced years who had for many years lived at Ocala, spending the summers at her lodge in Michigan. She had no children and after the death of her husband relied upon her friends in the land of adoption for advice and companionship. A niece and nephew, children of a half sister, lived in the north, one in Illinois, the other in Massachusetts. She met them infrequently. The nephew saw her in nineteen thirty for the first time in twenty years and called on her again in nineteen thirty-four. The niece visited her at the summer

home, but did not come to see her in Ocala until nineteen thirty-four.

Meanwhile, testatrix had become attached to the chief beneficiary, a young unmarried man, who lived in the same home with her for about fifteen years, except for an interval of approximately a year. He showed her every attention and courtesy, and the record is replete with evidence that, because of his kindness and consideration for her welfare, she came to look upon him as a son. In conversations with her acquaintances she often so referred to him. She frequently expressed the wish that he should receive her property upon her death and even showed concern for the preservation of it against the day when he would inherit.

The comparison of the genuine interest displayed by this beneficiary and the belated attentions of contestants is noteworthy.

Ten years beyond her allotted three score and ten, the testatrix arranged, or had the appellee arrange for her, the execution of a will by which she left to her niece the property in Michigan, her nephew a lot in Maine, and the remainder to the man who had befriended her. The latter was not present when the testament was actually signed. The following clause contained in it is very significant:

"He has been a great comfort to me in my declining years, and this gift to him is to partly recompense him for his many kindnesses to me in my last years."

There is little doubt that the ravages of time had begun to appear at the time of the execution of the will, and that she had become absent-minded, forgetful and somewhat childish. The question is whether these infirmities were so pronounced that she could not comprehend the extent of her property, her relationship with others and the effect

of her act. Newman v. Smith, 77 Fla. 633, 82 South. Rep. 236.

"Section 5. Who May Make a Will.—Every person, male or female, married or single, who is at least eighteen years of age and who is of sound mind may make a will. No other person may make a will." C. 16103, Laws of Florida, 1933.

We have often defined the mental capacity or soundness of mind referred to in the statute. In Hamilton v. Morgan, *supra,* it was said that it meant the "ability of the testator to * * * understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial understanding of the practical effect of the will as executed.", 112 South. Rep. text 81, and in Fernstrom v. Taylor, 107 Fla. 490, 145 South. Rep. 208, the comprehension "of the nature and extent of his property, the proper objects of his bounty, and the nature of the testamentary act." 145 South. Rep. text 209.

Repeatedly, and over a period of many years, testatrix had declared to various acquaintances that she intended for Churchill to inherit her property. These expressions she had uttered on numerous occasions before the appearance of childishness and absent-mindedness attributed to her. See Ziegler v. Brown, 112 Fla. 421, 150 South. Rep. 608; Scott v. McKibban, (Tex. Civ. App.) 110 S. W. Rep. 2d, 72.

This, with the circumstances surrounding the eventual execution, fail to convince us that her mind was in such state that she did not understand the extent of her property, the relationship to contestants or the effect of the instrument.

Because of other facts which we have related, we think,

too, that her act in distributing her property was entirely natural.

The right of designating legatees is highly valuable, particularly to the aged, and should not be considered lightly. It was but natural for testatrix to have favored one who contributed to her happiness and comfort in her declining years over the children of a half sister who had shown her scant attention. *In re* Starr's Estate, *supra.*

Appellants failed in their effort to meet the burden cast upon them, and the judgment of the Circuit Court is affirmed.

TERRELL, C. J., and BUFORD, J., concur.

BROWN, J. concurs in the opinion and judgment.

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.