IN RE: ESTATE OF CHARLES E. ALDRICH, deceased, W. WITHINGTON, *et al.*, v. JESSIE F. ACTON, *et al.*

3 So. (2nd) 856
En Banc
Opinion Filed September 12, 1941
Rehearing Denied October 15, 1941

*Doyle Campbell, J. Lewis Hall* and *Edwin Thomas,* for Appellants.

*Ray C. Brown,* and *C. N. Smith,* for Appellee.

PER CURIAM:—In this case there is ample competent evidence to sustain the order of the County Judge that the will herein be probated against an attack on grounds that the testator did not have testamentary capacity and was unduly influenced; and such order was affirmed on appeal by the Circuit Court. There was no harmful error of law or procedure in either the Probate Court or the Circuit Court on appeal. The order of the Circuit Court affirming the order of probate, will be affirmed by the Supreme Court on appeal, even though there was substantial conflicting evidence and even though the burden of proof on the issue of undue influence was technically upon the proponents of the will, a confidential fiduciary relation of patient and his physician and business manager existing between the testator and a leading beneficiary of the will; where as in this case, the legal

effect of the evidence, as to the testator's mental capacity to make a will and as to the circumstances attending the execution of the will, was not in favor of the contestants; and where, as here, it cannot be said with confidence that the will is not that of a competent testator. The beneficiaries of the will served the physical necessities of the testator during a long illness before and after the will was executed and the testator had only collateral surviving relatives who had not rendered him service or attention. See Marston v. Churchill, 137 Fla. 154, 187 So. 762; Estate of Starr v. Wilson, 125 Fla. 536, 170 So. 620; Ziegler v. Brown, 112 Fla. 421, 150 So. 608; Hamilton v. Morgan, 93 Fla. 311, 112 So. 80; Sweetser v. Ladd, 52 Fla. 663, 41 So. 705; Henson v. Denniston, 124 Fla. 843, 169 So. 624; Myers v. Pleasant, 118 Fla. 715, So. 204; Estate of Donnelly, 137 Fla. 459; 188 So. 108; Wartman v. Burleson, 139 Fla. 458, 190 So. 789; Rich v. Hallman, 106 Fla. 348, 143 So. 292; In re: Starr's Estate, 125 Fla. 536, 170 So. 620; Adams v. Saunders, et al., 139 Fla. 730, 191 So. 312.

Affirmed.

WHITFIELD, TERRELL, CHAPMAN and THOMAS, J. J., concur.

BROWN, C. J., concurs specially.

BUFORD and ADAMS, J. J. dissent.

BROWN, C, J., concurring—The general rule established by our decisions is that the party alleging that a *deed* or *gift inter vivos* was procured through the exercise of undue influence has the burden of proving that fact. But our decisions also very clearly recognize an exception to that general rule, to the effect that where the evidence plainly shows the existence

of confidential or fiduciary relations between the donor and the donee, the burden of proof shifts, and it then becomes incumbent upon the party who is the beneficiary of and receives the deed or gift, to show that the transaction was entered into fairly, voluntarily and with full understanding of the facts. Rich v. Hallman, 106 Fla. 348, 143 So. 292; Peacock v. DuBois, 90 Fla. 162, 105 So. 32; Adams v. Saunders *et al.,* 139 Fla. 730, 191 So. 312. As was said in the last cited case:

"Thus the burden of proof as to the bona fides and fairness of a transaction of this nature does not shift until the party alleging its invalidity has first shown the existence of confidence or fiduciary relations, or that there had been brought to bear upon the donor a dominant and controlling influence in behalf of the donee."

When I began the study of the case at bar, I was under the impression that this rule had also been applied by this court to wills, that is, to a case in which the validity of a will was attacked upon the ground that the will, or some material portion of it, was alleged to have been obtained by undue influence, and the evidence showed the existence of confidential relations between the testator and the beneficiary. But upon a study of our own cases, I have found no clear holding to that effect, and on reviewing the authorities and decisions of other jurisdictions I have become convinced that in most of such jurisdictions this rule does not apply to wills unless it clearly appears that the beneficiary not only occupied a confidential or fiduciary relation to the testator, but was also active in procuring the drafting or execution of the will. And there is yet some considerable division

of judicial opinion upon the correctness of the rule as thus modified. See annotations in 28 L.R.A., N. S., 271; 66 A.L.R. 228; 76 A.L.R., 373.

I think the true rule, and the one which is sustained by the greater weight of authority, is very well expressed by Mr. Redfearn in his work on Wills and Administrations of Estates in Florida, Sec. 52, pp. 64 and 65, as follows:

"In some states the mere existence of a confidential relation between the testator and the beneficiary raises the presumption that the will was procured through undue influence. The better rule is that the existence of undue influence is not presumed merely from confidential relations between the testator and the beneficiary. This is the rule to which the Florida courts incline, but the existence of confidential relations is a circumstance which may be considered on this issue. If it can be proved that a beneficiary who is charged with undue influence occupied a confidential relation towards the testator and was active in procuring the execution of the will in which he is a substantial beneficiary, a presumption of undue influence will arise and the burden of proof will be shifted to the propounder of the will.

"This presumption is one of fact and not of law. Consequently, this presumption may be rebutted by any evidence which shows that the testator acted freely and voluntarily in making his will and not under the coercion or the constraint of the person charged with the undue influence.

"If the testator occupied a confidential relation towards one or more of the beneficiaries in the will, and if undue influence is an issue, the mental and physical condition of the testator at the time the will

was executed is of great consequence. Proof of a sound mind and body does not preclude the possibility of undue influence; nor does proof of a weak mind and feeble body alone establish undue influence; yet it is well known that a person in feeble health or with a weak mind is more susceptible to improper influences than one of robust health and strong mind."

My study of our decisions leads me to the conclusion that no definite and clearcut commitment to this rule, as very well and fully stated by Mr. Redfearn, had been made by this Court up to the time Mr. Redfearn's book was written, nor for that matter, up to the present time. On rehearsing in the case of Newman v. Smith, 77 Fla. 667, 82 So. 236, and also in the original opinion cited by Mr. Redfearn in 77 Fla. 633, 82 So. 236, the question of what constitutes undue influence and whether or not the evidence in that case showed undue influence was discussed at considerable length, but the question of the burden of proof on that issue, where confidential relations are shown, was not definitely ruled on, though it is remarked that "undue influence must be proven when it appears that the testator was of sound mind.

I think the same observation might well apply to the cases of Hamilton v. Morgan, 93 Fla. 311, 112 So. 80; Gardiner vs. Goertner, 110 Fla. 377, 149 So. 186; In re: Starr's Estate, 125 Fla. 537, 170 So. 620, and In re: Gottschalk's Estate, 143 Fla. 371, 196 So. 844. In this last case, a presumption was held to have been raised by a set of circumstances somewhat unusual, shown by the evidence. In the case of Theus v. Theus, 119 Fla. 190, 167 So. 76, it was held that a presumption of invalidity does not attach to a will merely because the sole beneficiary requested and directed the draw-

ing of the will, although such circumstances might well excite the court to suspicious scrutiny. In that case Mr. Justice ELLIS, writing the opinion of the Court, observed that it had been pointed out, in the case of Gardiner v. Goertner, *supra,* that "other cases hold that where a will is prepared by one who benefits under it, a presumption arises that the will was procured by undue influence, and that is especially so when the one drawing the will stands in a confidential relation to the testator." Although the court in that case held that the burden was upon the appellant to show that the findings and order of the Probate Judge and the Circuit Court's decree affirming such order were erroneous, the question of the presumption of undue influence from confidential relations, and the burden of proof on the issue of undue influence, were not definitely ruled upon.

In the opinion of Mr. Justice TERRELL in Rich v. Hallman, *supra,* which involved the validity of a gift *inter vivos,* and wherein it held that in such cases a presumption of undue influence arose from confidential relations, it was observed that "the degree of proof necessary to invalidate a will is much greater than that required to set aside a gift *inter vivos."* Citing Hutcheson v. Bill, 142 Ala., 586, 38 So. 754.

While the case of Marston v. Churchill, 137 Fla. 154, 187 So. 762, does not deal directly with the question we are here discussing, the opinion of Mr. Justice THOMAS in that case does discuss the question of undue influence, and it was held in that case that the right of persons to dispose of property by will cannot be defeated on the ground of undue influence unless that element is clearly apparent, and that a confidential relation between the testator and the

beneficiary would not alone raise a presumption of undue influence. It is also held in that case that the burden of showing error in the decree of the Circuit Court affirming the judgment of the County Judge's Court was upon the appellant and as the appellants had failed to carry that burden, the judgment of the Circuit Court was affirmed. See also In re: Donnelly's Estate, 137 Fla. 459, 188 So. 108.

The nearest approach to an explicit ruling on this question is contained in the Per Curiam opinion of this Court in the case of Wartmann v. Burleson, 139 Fla. 458, 190 So. 789. In the opinion in that case it was said:

"The evidence in this case has been examined and there is no positive proof of undue influence; in fact, practically all the evidence is directed to the mental capacity of the testatrix. The burden is on the contestants who charge undue influence to prove it, but when a confidential relationship between the testatrix and the principal beneficiary is shown, a presumption of undue influence arises and the burden shifts to the proponent to prove that undue influence was not exercised.

"Mere confidential relations between the testator and the legatee are not alone sufficient to raise a presumption of undue influence so as to impose the burden of proof on the latter. Neither will affection or attachment suffice, but the will and mind of the testatrix must be overcome by force, fear, coercion, or over-persuasion."

There is an apparent contradiction in the foregoing quotation, wherein it is held that when a confidential relationship between the testatrix and the principal beneficiary is shown a presumption of undue influence

arises and the burden shifts to the proponent to prove that undue influence was not exercised, and the further statement that mere confidential relation between the testator and the legatee are not alone sufficient to raise such presumption of undue influence and shift the burden of proof on that issue. While no authorities are cited, the court evidently had in mind the general rule set forth by Mr. Redfearn in Section 52, in his work above cited, and merely omitted from the first paragraph the qualification coupling activity in procuring the execution of the will, on the part of a beneficiary who occupied a confidential relationship with the testator.

In Schouler on Wills, Executors and Administrators 6th ed., in sections 303-305, it is held that while a presumption of undue influence is raised by a gift *inter vivos* to one in a confidential relationship with the donor, with *wills* there is no such presumption, according to the weight of authority. It is there said:

"The distinction is obvious, as where there seems no good reason why a person should deprive himself of his property by gift to take effect during his life, there may well be good reason for making a will in favor of one with whom the testator enjoys confidential relations. So in the majority of courts the burden of showing undue influence rests on the contestant even where the gift is to a confidential adviser, still cases may arise where the facts are such as to shift the presumption, as where a will is made on a death bed."

Further on in the same section it is said:

"All that can be safely said is, that the special gift, together with the opportunity for procuring it, affords

ground for suspicion; and that for establishing the will it must be satisfactorily shown that the testator was of sound mind, that he clearly understood the contents of the will, and that he was at the time under no undue or improper constraint of volition, such as to destroy his own free agency. The superiority attached to such an influence is its distinguishing trait; the relation being such that the testator, especially if of weak or declining power, leans upon a guide, in whose honor he must confide, and that honor a court of equity is bound to insist upon. Yet the strength of the suspicion in each case must depend upon its own circumstances; and where it does not appear that the fiduciary drafted the will, advised as to its contents, or even knew it was to be made, there can be no imputation of fraud or undue influence so far, at least, as his connection with the testator is concerned, whatever reasons for assailing the will may be founded in the misconduct or confidential relations of others."

And still further on in Section 307 Mr. Schouler says:

"However, it has been held that where a confidential relation exists between the testator and a legatee the activity of the legatee in procuring the will imposes on the proponents the burden of proving that it was not the result of undue influence."

In the note a number of cases are cited, including several Alabama cases.

In 68 C. J. page 758, *et seq.*, it is stated that in a majority of jurisdictions a presumption of undue influence is not raised and the burden of proof is not shifted by the mere fact that a beneficiary occupied as regards the testator a confidential or fiduciary

relation; but that it is the general rule in practically all jurisdictions that undue influence is presumed and the burden of proof shifted so as to require the beneficiary to produce evidence which at least balances that of the contestant, when, in addition to the confidential relations, there exist suspicious circumstances such as the fact that the beneficiary took part in the preparation or procuring of the will, or actively drafted it or assisted in its execution, etc.

And in 28 R.C.L., at page 146, it is said:

"When the person who drafts a will or participates in procuring its provisions from the testator also occupies a relation of special confidence toward him, and would not be a beneficiary in the absence of the will, and is especially benefited by its terms, the general rule is that a presumption of undue influence will arise and the burden of proof will be on him to show that the will was executed freely and without his influence."

In the cases cited in the footnote to the above quotation there appears a citation of the case of Bancroft v. Otis, 91 Ala. 279, 8 So 286, 24 A.S.R., 904, which appears to be a leading case on this subject, being cited in practically all the text books and encyclopedias. The opinion in that case was written by Mr. Justice Thomas N. McClellan, a truly great jurist, afterwards for many years Chief Justice of the Supreme Court of Alabama. The opinion in that case thoroughly reviews the authorities on this question and the reasons underlying them and reaches the conclusion that the fact that confidential relations had existed between the testator in his life time and a legatee under the will is not alone sufficient to raise a presumption of undue influence on the part of the

proponent, and to cast on him, in case of contest, the burden of proof that the will was not induced by fraud or coercion on his part; but in the opinion this general rule is qualified in the following language:

"And we return to the rule as it was really held in Lyons v. Campbell, 88 Ala. 462, 7 South. Rep. 250, and other adjudications of this court, that the existence of confidential relations between the testator and the principal or large beneficiary under the will, coupled with the activity on the part of the latter in and about the preparation or execution of the will, such as the initiation of proceedings for the preparation of the instrument, or participation in such preparation, employing the draughtsman, selecting the witnesses, excluding persons from the presence of the testator at or about the time of the execution, concealing the making of the will after it was made, and the like, will raise up a presumption of undue influence, and cast upon him the burden of showing that it was not induced by coercion or fraud on his part, directly or indirectly; but that no such presumption can be predicated alone on confidential relations."

While there is considerable conflict in the authorities, the rule as thus announced in the Alabama case of Bancroft v. Otis appears to be supported by the weight of authority, and as Mr. Redfearn says in effect, is in line with the tendencies and implications of at least some of our Florida decisions when read in the light of the facts of each particular case.

The case of Bancroft v. Otis has apparently been followed and cited with approval in subsequent Alabama cases, some of which are Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; McQueen v. Wilson, 131 Ala. 606, 31 So. 94; Hutcheson v. Bill, 142 Ala. 586, 38 So.

754; Scarbrough v. Scarbrough, 185 Ala. 468, 64 So. 105; McElhaney v. Jones, 197 Ala. 303, 72 So. 531; O'Neill v. Johnson, 197 Ala. 502, 73 So. 21; Gaither v. Philips, 199 Ala. 689, 75 So. 295; Shirley v. Ezell, 180 Ala. 352, 60 So. 905.

The decisions of the various states with reference to the rule laid down in the case of Bancroft v. Otis, supra, appear to be quite thoroughly listed and commented upon in an annotation in 66 A.L.R. pp. 228 to 263, inclusive, but no Florida case is therein cited. There is also a very thoughtful and interesting annotation on this general subject, dealing particularly with the evidentiary force of the circumstances that one benefited by a will was the draftsman thereof, or was active in procuring its execution, contained in 28 L.R.A. (N.S.) pp. 270 to 288. There is also another valuable annotation in 76 A.L.R. pp. 373 to 386. The first paragraph of this last cited annotation reads as follows:

"As noted in 10 R.C.L. 897, the term 'burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a prima facie case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation

upon the whole case he fails. This burden of proof never shifts during the course of a trial, but remains with him to the end."

I think that the rule set forth by Mr. Redfearn in section 52 of his book, hereinabove cited and quoted, and which is practically the same as that obtaining in Alabama and apparently in a majority of the states, might well be adopted as a rule to govern the trial of future cases in this State, where wills are contested upon the ground of undue influence, unless we are prevented from adopting it by section 68 of the Probate Act, but as that rule has not hitherto been clearly and definitely established in this jurisdiction, I do not think that it should be applied in this case, although, if it were applied, I do think that it would require a reversal of the judgment of the Circuit Court affirming the judgment of the County Judge's Court. We have heretofore held in several cases that a change in a rule of procedure, or even in the construction of principles affecting substantive rights, should not be applied to cases tried before such change was made or before such new rule or principle was established; that the parties and their counsel, as well as the Judge trying the case in the court below, have the right to rely upon the law as it existed at the time the cause of action arose or at the time the case was tried, and that the enunciation of such new or changed rule would only be effective in subsequent cases, thus giving it a prospective rather than retrospective effect.

. Another question presented here is whether or not section 68 of the Probate Act of 1933 would preclude this court from adopting in future cases the rule laid down in section 52 of Mr. Redfearn's work herein-

above quoted from, being substantially the same rule set forth in Bancroft v. Otis, *supra*. I think this is a reasonable rule and should be adopted by this Court unless section 68 of the Probate Act precludes us from doing so. Said section 68 reads as follows:

"In all proceedings contesting the validity of a purported will, whether before or after such will be admitted to probate, the burden of proof, in the first instance, shall be upon the proponent thereof to establish, prima facie, the formal execution and attestation thereof, whereupon the burden of proof shall shift to the contestant to establish the facts constituting the grounds upon which the probate of such purported will is opposed or revocation thereof is sought."

In his book Mr. Redfearn comments on this rule as follows:

"It was apparently the doctrine of Barry v. Walker, 103 Fla. 533, 137 So. 711, that the proponent of a will had the burden of proof in a contest before probate, but upon probate a presumption of validity arose, and the burden of proof was upon the contestant in contests after probate. This section adopts the law prevailing in most jurisdictions that the proponent of the will must make out a prima facie case by showing execution in the prescribed manner, thus placing the burden on the contestant to prove the invalidity of the will."

The writer is inclined to think that the rule laid down in Bancroft v. Otis, and in section 52 of Mr. Redfearn's work could be applied in spite of the above statute, though I realize that this presents a very close debatable question. In other words, I think that the contestant who is attacking the will on the

ground of undue influence, can "establish the facts constituting the grounds upon which the probate of such purported will is opposed or revocation thereof is sought," by proving that a large beneficiary under the will, who had confidential relations with the testator, was active in procuring the preparation and execution of the will, so as to require the proponent to introduce evidence rebutting this presumption, such as that the testator had independent advice or the opportunity to avail himself of independent advice; or that the beneficiary was not present at the interview between the testator and the draftsman of the will, nor present at its execution; nor that the will as made was not an unnatural will, but such a will as the testator might reasonably have been expected to make under the circumstances; or that the testator was of sound mind and discussed with his attorney or the draftsman of the will the amount and character of his property and the party or parties whom he wished to devise the said property to, and their respective shares, in such a way as to show the testator was of sound mind and was able to and did, of his own volition, designate the objects of his bounty, giving good reasons therefor, or, that the disposition of his property as made by the will was a reasonable or natural one under all the circumstances of the situation.  This would still leave it for the determination of the Court, in the light of all the evidence, as to whether the weight of the evidence did, or did not, show that the will was secured by the exercise of undue influence.

I think that the evidence in this case was sufficient to sustain the findings of the County Judge as to the mental capacity of the deceased Charles E. Aldrich

to make a will, and that the recitals of findings in the order of the County Judge show that he took cognizance of certain facts which tended to refute any presumption of undue influence which might have been introduced by reason of the fact that one of the chief beneficiaries under the will, Dr. Earl H. McRae, was the trusted physician and friend of the testator and had requested the attorney who drafted the will to go to see Mr. Aldrich, telling him that Mr. Aldrich desired to make his will and intended to leave to him, Dr. McRae, one-half of his estate.

After making formal introductory recitals, such as that the contestants, naming them, objected to the proof and probate of the will on the ground of insanity and mental incompetency, and also upon the ground that the will was obtained by undue influence exercised by Dr. Earl H. McRae, in his own behalf and on behalf of his children, the County Judge's order contains the following findings:

"The Court further finds that the execution of the will of said deceased, Charles E. Aldrich, dated March 26, 1932, has been duly and legally proved in due form of law by George A. Downing, one of the subscribing witnesses thereto.

"The Court further finds that the contestants did not make proof of or sustain any of the allegations of their answers for the denial of the probate of said will, and that the equities of said cause are with the proponents.

"The Court further finds that at the time said will was executed, among other witnesses testifying that the decedent was fully mentally competent to make and execute a last will and testament, two reputable and outstanding physicians of the City of Tampa,

to-wit: Dr. L. B. Mitchell, and Dr. G. C. Bottari, examined said deceased, and that each of them appeared as witnesses and testified that the decedent was mentally competent to execute a will at the time said will was executed. That in addition thereto, said will was drafted by John W. Cone, an attorney of the Tampa Bar of unquestioned integrity and highly ethical in his practice, after the decedent had explained to said attorney the nature and extent of his property and to whom he desired it to go, and what disposition he wanted made of it in his will, and his reasons therefor; and that the residuary legatees were named in said will by said decedent after said attorney had inquired what disposition he wanted made of his property in the event of prior death of either or both of the legatees. That said will was then drafted by the said decedent, who approved the same and thereupon duly and legally executed the same before witnesses as his last will and testament, and that said attorney also testified that in his opinon said decedent was mentally competent to make and execute said will.

"The Court further finds that there is no evidence whatsoever of any undue influence having been exerted by Dr. Earl H. McRae upon said decedent, either in his own behalf or in behalf of his two said children, W. D. McRae and Fillette McRae, to obtain the execution of said will in behalf of any of them.

"The Court therefore finds that said will is the last will and testament of said deceased and was executed by him without any undue influence having been exercised upon him by said Dr. Earl H. McRae."

I will not take the time to discuss the voluminous evidence in this case, but it does appear that Dr.

McRae was not himself a beneficiary under the will at the time of the death of the testator. This I consider immaterial, as he was made a beneficiary in the will at the time it was drawn, his share to go to his children if Dr. McRae pre-deceased the testator. The will was executed in 1932. Dr. McRae died in 1934, some three years before the death of Mr. Aldrich. Mr. Aldrich's wife died several years before he did. His sister-in-law, Mrs. Jessie F. Acton, had been kind to him and visited him at times and corresponded with him. He had no children. His blood relations had paid scant attention to the old gentleman in his life time. Indeed, it appears from the record that they had nothing to do with him and had not written to him or inquired about him for some years before his death. It seems that none of his relatives had any real claim on the bounty of Mr. Aldrich unless it was his said sister-in-law, Mrs. Acton. It is also undisputed that Dr. McRae had been very kind and attentive to Mr. Aldrich and that during his illness for nearly a year before the execution of the will had looked after his business for him. In his interview with Mr. Cone, who prepared the will, Mr. Aldrich showed that he knew what his holdings were and the reason for leaving out his blood relatives and for his leaving one-half of his estate to Mrs. Acton and the other half to Dr. McRae. Mr. Cone asked him what he wanted done with his property in case Mrs. Acton or Dr. McRae should die before he did, and Mr. Aldrich told him that in the event of Mrs. Acton's death he wanted her one-half of the property to go to her children, and in the case of Dr. McRae's death he wanted such other half of his property to go to Dr. McRae's children.

Now there is no doubt that a confidential relation was shown between Mr. Aldrich and Dr. McRae, and the evidence shows that Dr. McRae had every opportunity to exert undue influence upon Mr. Aldrich, but the fact remains that there is no positive proof in this record that Dr. McRae ever exerted undue influence upon Mr. Aldrich, and it seems to me that any presumption of undue influence which might be raised from the confidential relations existing between the parties was rebutted by the testimony of the attorney who drew the will, and who, two days later brought the will out to Mr. Aldrich's home, where the will was gone over by him and duly executed before witnesses. Dr. McRae was not present on either one of these occasions, though he had introduced Mr. Cone to Mr. Aldrich when he first went out to see him, the Doctor leaving immediately after such introduction.

While there is considerable conflict in the evidence with respect to a good many matters, there was ample credible evidence in the record to sustain the order and judgment of the County Judge, and the action of the Circuit Court in affirming such judgment.

Under all the circumstances I do not think that this court would be authorized to reverse the judgment of affirmance rendered by the Circuit Court, but that on the contrary, it becomes our duty to affirm such judgment.

WHITFIELD, TERRELL, CHAPMAN and THOMAS, J. J., concur.

BUFORD and ADAMS, J. J. dissent.

BUFORD, J., dissenting—It appears to me as being uncontroverted that Dr. McRae occupied the most confidential relations, possible between two men, with

the testator; that the uncontradicted evidence shows that Dr. McRae initiated the proceedings for the preparation of the will by procuring a lawyer of his own choice, who was unacquainted with the testator, to go to the bedside of testator and get directions for the drafting of the will with the understanding that he, McRae, was to be thereby bequeathed a large share (one half) of testator's estate. The burden therefore to establish the absence of undue influence was then on the legatee. 28 R.C.L., pg. 146, Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 A.S.R., 904. The contestants carried the burden of showing the facts upon which the law prima facie presumes the exertance of undue influence. The correct rules as to burden of proof was not applied in the courts below. The judgment should be reversed.

ADAMS, J. concurs.

ADAMS, J., dissenting—I think the judgment should be reversed because: first, the probate court misinterpreted and erroneously applied the law relative to the burden of proof wherein it found:

"The Court further finds that the contestants did not make proof of or sustain any of the allegations of their answers for the denial of the probate of said will, and that the equities of said cause are with the proponents."

"That the contestants wholly and entirely failed to make proof either of the mental incapacity of said decedent or that said will was obtained by the exercise of undue influence by Dr. Earl H. McRae."

The record is conclusive of the close confidential and fiduciary relation between testator and beneficiary. Dr. McRae was testator's physician, trusted

business adviser and manager. Testator was aged, infirm and reposed great confidence in Dr. McRae. The beneficiary was likewise active in procuring the execution of the will, as well as establishing and preserving proof of mental capacity of testator. This Court has held in Barry v. Walker, *et al.,* 103 Fla. 533, 137 So. 711:

"One of the essential requirements of law in trying any case is that the court shall weigh and try the facts of the case in the light of the correct rule as to who has the burden of proof with respect to the issues, and a judgment will be reversed for a retrial of the facts according to the proper principles of law governing the burden of proof where it appears that the ruling of the trial judge as to the burden of proof was erroneous."

This Court has held in Wartmann, *et al.,* v. Burleson, *et al.,* 139 Fla. 458, 190 So. 789:

"In will contest, burden is on contestants who charge undue influence to prove it, and only when a confidential relationship between testatrix and principal beneficiary is shown will a presumption of undue influence arise and the burden shift to the proponent to prove that undue influence was not exercised."

The English rule is:

"Although there is no rule of law which forbids a man to bequeath his property to his medical attendant, yet it is not favorable circumstance for one in such a confidential position with respect to a patient laboring under a severe disease to take a large benefit under such patient's will, more particularly if executed in secrecy and the whole transaction assumes the character of a clandestine proceeding. In such

a case the onus will lie heavily upon the party bene-fited to maintain the validity of the will." Ashwell v. Lomi, L R 2, page 377, 7 Moore (PC) 320, News English Case Law, Digest Subject, Wills 238.

Second. There was harmful error in the receipt of evidence for proponent. There is a presumption fa-vorable to findings of fact by the probate court where there is ample evidence to support same. This pre-sumption attaches, however, only where it appears that the case was tried according to established principles of law. All parties are entitled to a legal trial. When essential principles of the law of evi-dence are violated the case has not been tried accord-ing to law and in such instance no presumption of correctness follows the findings.

In this case there was error in the receipt in evi-dence of good reputation of the proponent. Numer-ous letters were erroneously received in evidence from Dr. McRae and Mrs. Knight. They violated the hearsay rule and in many instances were self serving in character. They greatly tended to prove propo-nent's case. By the admission of same over objection, the trial court judicially determined they were proper testimony, and we might as well assume that the findings were based on the erroneous testimony as well as proper testimony.

The trial court sees and hears the witnesses. His findings enjoy a presumption of correctness on appeal. The parties are entitled therefore as of right to have the court of original jurisdiction proceed in a legal manner. Final determination by this Court irre-spective of the errors pointed out in effect deprives the parties of the right to have the evidence passed on

by the probate court in a legal manner. It amounts to this Court assuming original jurisdiction with two strikes (presumption of correction) on the appellee.

The judgment should be reversed.

BUFORD, J., concurs.