RAWLS, Judge.
We are here confronted with a contest between three surviving daughters as to disposition of their deceased mother’s estate. Two of the daughters (Jessie W. Clark and Julia W. Daugherty) are appellants and contend that the will admitted to probate which devised all of testatrix’s property to the third daughter (Nelle Whaite Stiles), appellee, was the product of undue influence by this sole devisee, and thus the trial judge erred in probating this document.
On December 13, 1970, testatrix, Ella Willis Whaite, died at the age of 97. Ap-pellee procured the admission to probate of testatrix’s will dated May 1, 1970, which devised to her daughter, appellee Nelle Whaite Stiles, testatrix’s entire inheritance from testatrix’s deceased sister.[1] Testatrix’s other two daughters, appellants, filed the instant petition for revocation of the will on April 6, 1971, and after extensive testimony was adduced in a two-day hearing, the trial court denied revocation.
The hearing commenced with appellee presenting evidence to establish the validity of the May 1, 1970, will which had been admitted to probate. A Notary Public testified that testatrix came to her office on *55 May 1, 1970, accompanied by Mrs. Nelle Stiles and her daughter, Mrs. Neva Taylor, and after chatting for a few minutes, testatrix stated: “. . . Mrs. Whaite told me that she was getting old and that she wished to correct something wrong that she had done.” The Notary further testified that testatrix told her she had no estate of her own, “. . . that what she had was her sister’s estate, the estate of her sister Lillian, which had been originally willed to Mrs. Stiles and that she was certain that her sister wanted Mrs. Stiles to have the entire estate inasmuch as Mrs. Stiles had taken care of her, and also her husband . . In response to the court’s question, the Notary testified that the will was properly executed.
Appellants founded their attack on the will primarily upon the theory that it was the product of undue influence by the sole devisee, appellee-daughter of testatrix, Nelle Whaite Stiles. In this regard appellants relied heavily upon a series of letters purportedly written by testatrix to appellant Julia W. Daugherty spanning a period of time from March 13, 1968 to April 7, 1970.
Prior to offering the letters into evidence appellants called Ramelle D. Hutson as a witness. Mrs. Hutson testified that testatrix was the mother of her sister-in-law ;[2] that she and testatrix were very close in the past years and that she visited testatrix every Thursday. Mrs. Hutson told the court that she was familiar with testatrix’s handwriting and then identified each of the letters as being in testatrix’s handwriting. We pause here to note that this witness who identified the controverted letters as being writings authored by testatrix was in no way interested in the outcome of this litigation.
Appellants then offered into evidence a letter dated November 13, 1968, addressed to Mrs. Julia Daugherty, and signed “Mama.” The appellee objected, “. on the ground of the Dead Man’s Statute. It is a communication between parties to these proceedings . . . My only argument is that it has been established by competent evidence that it was a communication between the decedent and a party to this suit . . .” After hearing argument by counsel, the trial court ruled: “. . . that it is not admissible for the purposes of showing undue influence on the testator when the will in question was executed in that it was made some two years prior to the execution of the will”, and “. . . because of the prohibition of the Dead Man’s Statute.” Appellants next proffered a letter dated November 18, 1968, which was objected to on the same grounds and “. . . furthermore there has been no proper foundation laid for the admission of the letter into evidence because it is a communication not to the witness but to another party, one of the three heirs, and therefore that should not be admitted into evidence.” In response to appellants’ question: “And it is the same ruling, Your Honor?”, the Court answered, “Yes, sir.” The remaining letters were proffered by appellants and as to each exhibit appellees made the same objections and the court made the same ruling. Thus, during trial the controverted letters proffered were not admitted into evidence upon the following grounds: (1) Because the will in question was executed approximately two years after some of the letters were written; (2) no proper foundation was laid as the letters were communications not to the witness but to another party; and (3) because of the prohibition of the Dead Man’s Statute. We will examine each of these separately.
We first turn our attention to the contention that the letters were not admissible as they were irrelevant. As stated above, the series of proffered letters spanned a period of time from March 13, 1968, through April 7, 1970. The controverted will was dated May 1, 1970, therefore, the proffered letters presented evidence of a continuous pattern of testatrix’s state of mind during the two-year period prior to executing the will. The trial *56 judge’s rejection of the letters on the basis of the lack of relevancy was erroneous.
The second objection, “no proper foundation,” was apparently limited to the fact that the letters were communications to a party other than the witness. In his order denying petition requesting revocation of order admitting will to probate, the trial judge stated: “. . . the Court heard testimony offered in behalf of the Petitioners and received into evidence two writings on behalf of Petitioners, and denied admission into evidence fourteen other writings for failure of Petitioners to lay a proper foundation for introduction of said writings.” The sole objection as to “no proper foundation” was limited to the fact that the proffered letters were communications to a party other than the witness. At no time during the taking of testimony did the trial court comment upon the subject of “no proper foundation.” Its sole action in this respect was sustaining appellee’s objections. Under these circumstances, the ruling of the trial court on this point must be reversed.
The last objection raised in the trial court denying admission of the letters into evidence was the Dead Man’s Statute. Generally, letters such as these in the instant case which contain admissions and declarations are competent evidence.[3] The question now becomes: Were the letters of testatrix, which are otherwise competent evidence, barred by the Dead Man’s Statute?
 The “Dead Man’s Act”[4] has been dissected and discussed in law review commentaries and judicial decisions throughout the history of jurisprudence in this state. An excellent treatise upon the subject is Judge Brooker’s dissertation entitled “The Decedent Comes to Court”[5] wherein he stated: “. . . the statute is not a complete bar, and in devious ways the decedent’s voice is sometimes heard vicariously in the Probate Court.” The purpose of the Dead Man’s Statute is to prevent the surviving party or parties from having the benefit of his or their own testimony where, by reason of the death of the adversary, his representative is deprived of the decedent’s version of the transaction or statement. The statute applies to persons interested in the event of the action and operates as a bar to their testimony as to transactions and communications between them and the deceased person.[6] In Fields v. Fields [7] the Florida Supreme Court, quoting from I Greenl. Ev. § 390, stated:
“ ‘The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be present, certain, and vested interest, and not an interest uncertain, remote, or contingent.’ ” (Emphasis theirs.)
The above cited authorities clearly establish that letters or other documents executed by a decedent may be competent evidence if they are properly identified and authenticated by a witness who is not interested in the outcome of the case. In Matthews v. Matthews[8] the trial court rejected handwriting samples of the decedent upon the ground that the witness identifying the writings was an interested party in the litigation as defined by the Dead Man’s Statute. The opinion of the court apparently found no objection to the introduction of the documents signed by the decedent or the identification of same by a party familiar with decedent’s handwriting. *57 The trial court’s exclusion was based solely on the interest in the outcome of the litigation of the witness who identified the decedent’s handwriting samples.
The ultimate question is: Did the witness, Ramelle Hutson, possess such an interest in the outcome of the instant case that she was precluded by the Dead Man’s Statute from testifying? We hold that she did not. As stated above, this witness was a sister-in-law of one of the sisters contesting the will; she did not stand to gain or lose by the direct legal operation and effect of the judgment. Therefore, the letters were not barred from evidence by the Dead Man’s Statute.[9]
Lastly, on the subject of the letters, appellee strenuously argues in her brief that evidence of testatrix’s handwriting was not properly authenticated. As we have laboriously observed, objection was not made by appellee on this ground nor did the trial court reject the letters upon such a predicate. Furthermore, the witness who identified each letter as the handwriting of testatrix testified that for many years prior to testatrix’s death she had visited testatrix practically every Thursday, did some shopping for her, and was familiar with her handwriting. This witness positively identified each proffered letter as being the handwriting of testatrix. We hold that the trial judge erred in failing to admit the subject letters in evidence.
The salient question remaining is: Did the trial court err in failing to revoke testatrix’s May 1, 1970 will on the grounds that it was procured by undue influence? The evidence in this record leads us to the conclusion that the question must be answered in the affirmative. The sole devi-see, Nelle Whaite Stiles, was of the firm conviction that she was entitled to the proceeds of her deceased aunt’s estate. She was instrumental in procuring the execution in her favor of a will by her incompetent aunt. After Nelle failed to inherit under her aunt’s will, she procured a power of attorney from her mother to handle her aunt’s estate. She discovered that her mother had executed a will in 1968 leaving her estate to her three daughters. Representative statements in letters written by testatrix during approximately two years prior to the May 1, 1970 will are: “Nelle & Neva came yesterday P.M. & brought letters, etc. from Lawyer in Dallas & had me sign — so what it means, I do not know —& I don’t care. I can’t bear to be treated so — •” “Nelle told me about you calling her (only this P.M.) & the conversation. I think she has me all tied up to give her everything if I get it from Lillian’s estate! . If I get anything I do want you & Jessie & Nelle to share equally.” “Nelle & Neva came over yesterday P.M. & visited awhile. Left in a huff! Got mad with me because I said if I did get anything from Lillian’s estate, I wanted Jessie, Nelle & Julia to share it with me — (equally). Nelle wants it ALL! I said ‘NO’. I am sorry Nelle is so ‘Greedy’ — & ‘selfish’ .” “Nelle came yesterday & visited —she brought letters she made me sign I did not want to sign, but she made me — I’m afraid of her tongue.” “I am enclosing ‘MY WILL’ which I found this morning — had never seen before— Nelle & Neva came up last afternoon I had not seen Nelle since she had me sign legal papers — ‘Power of Attorney’ & made me sign . . .” (Emphasis testatrix’s.)
In addition to the letters, the uncontro-verted testimony was that Nelle prepared the subject will; she and her daughter, Neva, escorted testatrix from the nursing home in which she was living across the street to a Notary Public that Nelle had used in connection with other legal papers; testatrix, Nelle and Neva remained in the Notary’s office at all times during the execution of the will; and Neva was a subscribing witness.
*58 A presumption of undue influence arises when the contestant to a will proves that a substantial beneficiary under the will occupies a confidential relationship with the testator and is active in procuring the will.[10] Nelle was active in the preparation and execution of the will. In taking complete charge of her mother’s interest in Lillian’s estate, Nelle placed herself in a highly fiduciary capacity. The trial judge erred in finding that Nelle did not occupy a fiduciary relationship with her mother. The burden rested on Nelle, the sole beneficiary to overcome the presumption of undue influence,[11] and this she failed to do.[12]
The judgment appealed is reversed with directions to set aside the order of probate of the May 1, 1970 will.
Reversed.
SPECTOR, C. J., and CARROLL, DONALD K., J., concur.

. Testatrix’s inheritance from her sister is referred to as Lillian’s estate and also as the Trotter estate.

. Ramelle D. Hutson is the sister-in-law of appellant Julia W. Daugherty.

. 13 Fla.Jur., Evidence § 352.

. Section 90.05, Florida Statutes, F.S.A.

. Brooker, The Decedent Comes to Court, 23 Fla.L.J. 108 (1949); see also, Wahl, Rex Beach, Dr. Brown, and the Dead Man’s Statute, 25 Fla.L.J. 236 (1951).

. Broward National Bank of Fort Lauderdale v. Bear, 125 So.2d 760 (2 Fla.App.1961).

. Fields v. Fields, 140 Fla. 269, 191 So. 512, 514 (1939).

. Matthews v. Matthews, 177 So.2d 497 (2 Fla.App.1965).

. See Fields v. Fields, supra, where the daughter of the claimant was not precluded from testifying because she was not an “interested witness” within the purview of the Dead Man’s Statute.

. In re Estate of Carpenter, 253 So.2d 697 (Fla.1971.)

. In re Knight’s Estate, 108 So.2d 629 (1 Fla.App.1959).

. In re Aldrich’s Estate, 148 Fla. 121, 3 So.2d 856 (Fla.1941).