ALICE B. RICH, a widow, *Appellant*, vs. ISABELLA HALLMAN, a widow, *Appellee*.

143 So. 292.

Division B.

Opinion filed August 3, 1932.

*Kurtz & Reed,* for Appellant;

*George M. Thompson* and *Botts & Field,* for Appellee.

TERRELL, J.—The Appellant exhibited her bill of complaint in the Circuit Court of Dade County praying for the cancellation of an assignment of a note and mortgage to the Appellee. Answer to the bill was duly entered, a General Master was appointed who took the testimony and made his finding to the effect that the assignment of the note and mortgage was made under misapprehension of delusion and was obtained under circumstances constituting fraud upon complainant, against which equity should grant relief. Exceptions to the master's report were sustained by the Chancellor and his final decree was entered holding the assignment to be valid and to be the voluntary act of the complainant. To that final decree this appeal was prosecuted.

The decisive question brought here for solution is whether or not the assignment of the note and mortgage by Appellant to Appellee should be permitted to stand.

The record discloses that the appellant, who was complainant below was seventy-six years of age, an invalid, confined to her bed and wheel chair; she was unable to walk and was dependent on others to administer the comforts of life. She was possessed of an income of one thousand dollars per month, was of vacillating disposition and could not recall past transactions, except in a most general way. The Appellee, who was defendant below was much younger than the complainant and was employed by her (complainant) as a trained nurse and personal attendant at a salary of one hundred dollars per month and expenses. The defendant was of alert mind, her services were very satisfactory and she was placed in charge of the household and personal affairs of the complainant.

Soon after defendant's employment, through the influence of herself and that of friends, complainant became obsessed with a delusion that defendant's services were exceptionally valuable to her and could not be duplicated and that she would resign unless a substantial increase in salary or a considerable bonus was offered her to continue in her service. While under this delusion, the complainant offered the defendant a bonus of ten thousand dollars to remain with her as long as she lived, the said bonus to be paid by assigning a certain five thousand dollar note and mortgage, being the identical note and mortgage involved in this litigation, to defendant, and by increasing her (defendant's) regular monthly salary check to the sum of three hundred dollars per month till the remaining five thousand dollars was paid.

No record whatever of this agreement was made, nor was provision made for the payment of any balance of the five thousand dollars that might still be due in the event of the death of the complainant before the salary increase had amounted to that sum. No penalty was imposed in the event of the resignation of the defendant before the death of the complainant and no rebate was provided to complainant in the event of the illness or death of defendant before that of the complainant. Several payments were made on the monthly salary increase and the first interest installment due on the note assigned after assignment was made to the defendant.

The bill to cancel was filed as soon as complainant discovered she was not receiving the interest on the mortgage and alleges that the assignment was not genuine, that it was obtained through the trickery and deceit of defendant, with intent to deceive complainant, was made without any consideration, and that if complainant did in fact execute said assignment she was wholly ignorant of the nature of the instrument or the legal effect thereof.

The complainant denies positively that she executed the assignment and asserts that she has no idea how it was obtained. The notary who is supposed to have taken the acknowledgment also disclaims any knowledge of it. At the time defendant was employed by complainant they were complete strangers, her compensation was one hundred dollars per month in addition to living, traveling, and incidental expenses, yet in less than one year, employed in the same capacity, we find her drawing three hundred dollars per month and having received as a gift the note and mortgage on which this suit is predicated.

In view of the age and infirmity of the donor, the confidential relation existing between the donor and the donee, the influence shown to have been exerted over the donor by the friends of the donee and by the donee herself and in view of other facts and circumstances peculiar to this case, we feel impelled to hold that the duty was on the donee to show that the assignment of the note and mortgage brought in question was bona fide and that it was not secured by undue influence, deceit or other improper means. Peacock vs. DuBois, 90 Fla. 172, 105 So. 32; Nelson vs. Brown, 164 Ala. 397, 51 So. 360; Haslinger vs. Gabel 344 Ill. 354, 176 N. E. 340; Allore vs. Jewell, 94 U. S. 506-513, 24 L. Ed. 260 pages 263-264, 12 R. C. L. 972; Black on Rescission and Cancellation Sections 249 and 253.

All these authorities support the general rule founded on public policy that where a mutual confidential relation exists and a gift is made to one in whom the confidence is reposed it is prima facie void because of such relation. The law presumes in other words, when such relation exists that the gift was obtained by undue influence or other improper means. When persons occupy positions of trust and confidence as did the parties to this cause, they are held to a strict measure of candor in their dealings and any transactions between them predicated on a grossly in-

adequate consideration will be viewed as suspicious. Equity raises a presumption against the validity of such dealings and imposes on the vendee or the donee the burden of showing the good faith and voluntary conduct of the donor or the vendor as the case may be. 12 R. C. L. 972 and cases cited.

The proof to establish a gift after the death of the donor must be clear and convincing. Garner vs. Bemis, 81 Fla. 60, 87 So. 426, but the degree of proof necessary to invalidate a will is much greater than that required to set aside a gift inter vivos. Hutcheson vs. Bibb, 142 Ala. 586, 38 So. 754.

The equitable doctrine affecting undue influence is grounded on principles of the highest morality. It reaches every case where confidence is reposed and betrayed or where influence is acquired and abused, and is ever active and searching, when dealing with gifts. The character of the confidence makes no difference, if it enables one in whom a trust is placed to exercise undue influence over the person trusting him equity will grant relief against it and will allow no transaction between the parties to stand if the one who profits from the one trusting him conceals anything in his breast which equity requires that he reveal. Pomeroy's Equity Jurisprudence (3rd Ed.) Vol. 2, pages 1736, 1737, 1747, and 1748.

For reasons announced in this opinion the burden was on Appellee to show conclusively that the gift to her of the note and mortgage were free from the taint of undue influence. The judgment below is accordingly reversed.

Reversed.

WHITFIELD, P.J. AND DAVIS, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.