F. ADAMS, by His Next Friend, L. S. ADAMS, v. W. A. SAUNDERS, Individually and as Administrator of the Estate of N. Adams, Deceased; ALBERT F. SAUNDERS; MRS. JULIE S. DICKERSON (also known as Julie A. Dickerson), *et vir;* MRS. MINNIE A. STRICKLAND, *et vir;* THE BARNETT NATIONAL BANK OF JACKSONVILLE; THE BARNETT NATIONAL SECURITIES CORPORATION; THE BARNETT NATIONAL COMPANY, and ADAMS BROTHERS, INC.

191 So. 312

En Banc

Opinion Filed June 16, 1939

Rehearing Denied October 17, 1939

*Stafford Caldwell, Charles Cook Howell; Milam, Mc-Ilvaine & Milam, Lloyd Smith* and *Charles E. Davis,* for Appellant;

*Olin E. Watts, Jennings & Watts* and *F. B. Harrell,* for Appellees.

THOMAS, J.—Frank Adams, because of sterling character and keen business ability, had enjoyed almost phenomenal success as a farmer, merchant and banker. In his early life he resided in Jasper, and subsequently removed to Jacksonville, where he became the president of one of Florida's largest and strongest financial institutions. In this, as in his other business ventures, he was energetic, able, successful. As a result of his acumen, he amassed a large fortune. Not content with progress which enhanced his personal wealth, he gave of his talents to the State by serving in public office, was on two occasions president of the State Senate.

About twenty years ago, he fell victim to a disease known as paralysis agitans, and because of its ravages retired from active business, save that in a supervisory capacity he main-

tained a connection with one of his enterprises in Jacksonville. For about twenty years, too, his blood pressure has been far above normal. Affluent, he maintains a staff of household servants sufficient to insure every comfort possible in his present physical condition, and, since 1921, has been continuously attended by his wife, by training a nurse. After many years of comparative business inactivity his interests are still valued at several hundred thousand dollars.

Nat Adams, a bachelor and brother of Frank, was also successful in the business world, and exhibited many of the fine traits of character that were peculiar to Frank Adams. He, too, was rewarded for his industry and acumen by the accumulation of property, said to be worth seven hundred thousand dollars.

Death came to Nat Adams, February 2, 1937. He left no will disposing of his estate, and was survived by his brother, a sister, Mrs. Minnie A. Strickland, and the following children of a deceased sister; W. A. Saunders, Doctor Albert F. Saunders and Julie Saunders Dickerson. Immediately after Nat Adams died, a search was made for his will, but none could be found, and subsequently an administrator was appointed for his estate.

February 6, 1937, Frank Adams and Rubye Adams, his wife, Minnie A. Strickland and A. J. Strickland, her husband, Julie A. Dickerson and R. G. Dickerson, her husband, W. A. Saunders and Albert F. Saunders executed an agreement reciting the belief of the parties that, although Nat Adams died intestate, it was his intention to dispose of his property as the parties therein provided, by to-wit: (1) establishing a trust fund for a colored servant, (2) setting up another trust fund for the upkeep of the family cemetery, (3) making an expenditure for the erection of a wall around said cemetery, and (4) distributing the net proceeds one-

half to W. A. Saunders, one-third to Julie A. Dickerson (one hundred thousand dollars of which was to be used as a trust fund for her benefit) and the remaining one-sixth to Albert F. Saunders.

On May 15, 1937, the same parties executed a confirmatory agreement, ratifying the one of February 6, and setting out that the things which were to be done under the latter had been accomplished.

This is the background of the litigation which is brought here for review.

In June, 1937, a bill of complaint was filed by F. Adams, by his next friend, L. S. Adams, charging that the agreement of February 6 was the result of a conspiracy on the part of W. A. Saunders, Albert F. Saunders, R. G. Dickerson and others to cause Frank Adams to convey his interest in his brother's estate at a time when he was mentally incapable of comprehending the transaction and when the will of the conspirators was substituted for that of Frank Adams. By the pleading it was sought to invalidate the instrument providing for the distribution of the estate.

The various defendants answered, and Frank Adams filed his petition in the cause, styling his "next friend," L. S. Adams, an intermeddler; stating that the bill was filed without his knowledge; charging that the proceeding was "acquiesced in" by all of his children; denying the allegations of fraud, undue influence and his own mental incapacity; and praying for dismissal of the bill.

L. S. Adams, next friend, answered the petition and reasserted the prayers of the bill.

The chancellor, after taking testimony for about thirty days and hearing argument for two days, dismissed the bill by a very comprehensive decree, which has proven helpful

to this Court in considering the record of more than 4,000 pages.

It seems unnecessary to search beyond the decisions of the Supreme Court of Florida to announce the rule by which the evidence shall be weighed in determining whether Frank Adams was mentally incompetent at the time he executed the instruments of February 6 and May 15, and if he was unduly influenced to give away his share of his brother's estate. We refer to the opinions in Rich v. Hallman, 106 Fla. 348, 143 South. Rep. 292, Travis v. Travis, 81 Fla. 309, 87 South. Rep. 762.

In the case of Rich v. Hallman, *supra*, the complainant brought suit to set aside a gift made to her nurse, the only consideration for which was that the attendant would remain with the donor as long as the latter lived. It was charged that the transfer grew out of deceit and trickery, and that assignor was ignorant of its nature or legal effect. Placing emphasis on the influence exerted by a young person of alert mind upon one of advanced age, a confidential relationship existing between them the Court said the burden was on donee "to show conclusively that the gift to her * * *" was free of undue influence.

In the latter case (Travis v. Travis, *supra*), the contest was between heirs of a grantor to invalidate a deed made by an imbecile. The Court announced that:

"* * * The only question presented and argued is whether in view of the evidence, the decree should have been for defendant; the contention being that the evidence was sufficient to establish the fact of the mental incompetency of the grantor to make a valid deed at the time of the execution of the conveyance." 87 South Rep., text 762.

The rule followed in answer to that question was:.

"The presumption is that the grantor was sane, and the

burden of proof upon the issue of her alleged mental incapacity to make a valid conveyance was upon complainants." 87 South. Rep., text 765. See also Hassey v. Williams, 127 Fla. 734, 174 South. Rep. 9, text page 11.

Applying these rules, it would seem that the bearer of the burden of proof with respect to undue influence would be Frank Adams, but a rather anomalous situation is produced by his repudiation of the act of his next friend in bringing the suit and the issues made by the petition of complainant, himself, and the answer of his representative. Even invoking the rule in its strictest sense and placing upon complainant this burden despite his petition, we cannot conclude that there is not a preponderance of evidence to support the finding of the chancellor that there was lack of this element in the transaction.

In Peacock v. Du Bois, 90 Fla. 162, 105 South. Rep. 321, we find at page 332 the following:

"In Howard v. Farr, 115 Minn. 86, 131 N. W. 1071, the Court said:

" 'To constitute' undue influence, 'the mind * * * must be so controlled or affected by persuasion or pressure, artful of fraudulent contrivances, or by the insidious influences of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but * * * subject to the will of purposes of another.'

"In Myatt v. Myatt, 149 N. C. 137, 62 S. E. 887, the Court said that, to constitute 'undue influence,' it is unnecessary that moral turpitude or improper motive should exist, and if one, from the best motives, having obtained a dominant influence over a grantor's mind, induces him to execute a deed or other instrument materially affecting his rights, which he would not have otherwise executed, so exercising

the influence obtained that the grantor's will is effaced or supplanted, the instrument is fraudulent."

The first part of this quotation appears in the final decree.

From the record, it seems that the person nearest grantor, hence more likely to have influence over him, was his wife, nurse and companion, but she could hardly be charged with artful or insidious influence when she joined him in the deed disposing of an interest, part of which she, upon his death would receive. Another grantor, his sister, likewise was conveying her undivided third interest without monetray consideration and in such circumstances that artifice, fraud or deceit could not be attributed to her. These persons, particularly the first, seemed to have enjoyed the confidence of Frank Adams more than those who were actually benefited.

Our study leads us to the conclusion that by a preponderance of the evidence there was no taint of undue influence, and that the transfer was motivated by a desire on the part of Frank Adams and Minnie A. Strickland to do what they thought Nat Adams would have done, had time been given him to make a will. To ascribe to them any other motive does not seem logical. Each suffered a loss of thousands of dollars. The act of Adams was the same, of course, as that of his sister. It would be unnatural to attribute to either the motives of spite or hatred, and we feel no justification for deciding that the nieces and nephews brought about the transfer by undue influence.

The last problem is the one relating to the mental competency of the complainant. According to the announcement of the law on this subject in Travis v. Travis, *supra,* it must be shown that the mind was in such condition that the grantor could not comprehend the nature of the transaction.

Numerous witnesses, of varied business and professional experience, testified about the mental state of the complainant. A dealer in poultry, lawyers, a merchant, bankers, a salesman, business associates, a masseuse, a circuit judge, personal servants and a gardener related their observations of his actions during periods ranging from several years to comparatively shorter times.

Many physicians gave their opinions of his mental health and the probability or improbability of his comprehension of the transaction here under question. It is noteworthy that much of the testimony supporting allegations of his incapacity was based on hypothetical questions, while the doctors who had attended him very generally agreed that he was mentally fit to understand his action. See Mason v. State Bank of Orlando, 94 Fla. 132, 113 South. Rep. 664.

That complainant was subject to delusions at times, probably traceable to the effects of the drug hyoscine, was established, but the evidence falls far short of preponderating in support of the theory that at the time of the original and confirmatory agreements he did not "comprehend the effect and nature of the transaction."

Throughout a disheartening physical ailment, he seems to have maintained an interest in affairs of the day, business, the stock market and other topics which engage the attention of well informed men, and at this time, after an era of financial instability that has taxed the most sagacious, and after being physically helpless for nearly twenty years, is possessed of the fortune which he had the ability to accumulate and the wisdom to preserve.

A further discussion of the evidence hardly seems necessary. The application of the principles discussed above in the light of exhaustive briefs and comprehensive argument of counsel, leads us to the conclusion that the chancellor's

decision was proper, so the final decree dismissing the bill is affirmed.

. TERRELL, C. J., and WHITFIELD and BROWN, J. J., concur.

BUFORD, J., concurs specially.

CHAPMAN, J., disqualified.

BUFORD, J. (concurring specially).—I concur in what is said in the opinion prepared by Mr. Justice THOMAS concerning the phase of this case which involves the question of whether or not Frank Adams was the victim of undue influence and was caused by such undue influence to execute an instrument disposing of property of great value by way of gift to certain nephews and nieces.

The record fails to show the exercise of any influence by anyone who benefited from the transaction. Such influence as may have been exerted was exerted by those whose financial status was in no way improved by the action of Mr. Adams; nor is there any reason appearing in the record why those who had the opportunity to influence Mr. Adams should have had any desire to unduly influence him in this regard.

As the second question presented, viz.: Whether or not Mr. Adams possessed mental capacity to determine and act for himself so that his act in this regard would be his valid and binding deed, I can only agree with the conclusion reached in the majority opinion because of that well established rule that, "Where the findings of the chancellor are supported by the evidence, or where the evidence is conflicting and there is substantial evidence to support the chancellor's findings such findings will not be set aside unless the appellant makes it clearly to appear that substantial error was committed by the chancellor in his conclusions, or that the evidence clearly shows them to be erroneous."

See cases cited in paragraph 169, Appeal and Error, Vol. 1, Encyclopedic Digest of Florida Reports.

After consideration of the evidence submitted in this case it is my opinion that had the chancellor reached the conclusion that the deed involved was void because 'of the mental incapacity of Frank Adams, this Court would have been bound by that conclusion and would have been required to affirm such findings in conformity with the rule above stated.

In other words, the evidence is so conflicting in regard to Mr. Adams' mental capacity that the appellate court is bound to affirm the findings of the chancellor, regardless of the conclusions to which those findings lead.

## On Petition for Rehearing

Brown, J.—The general rule is that the person alleging that a contract, deed or gift was procured through the exercise of undue influence has the burden of proving that fact. But there is an exception to that general rule, to the effect that where the evidence clearly shows the existence of confidential or fiduciary relations between the parties, the burden of proof shifts, and it then becomes incumbent upon the party who procures the contract or who receives the deed or gift, to show affirmatively that the transaction was entered into fairly, openly, voluntarily, and with full understanding of the facts. See Black on Rescission of Contracts, Section 253, and 12 R. C. L., 972, both of which authorities are cited in Rich v. Hallman, 106 Fla. 348, 143 So. 292. As was said in 12 R. C. L. 972, "Where a confidential relation existed between the donor and the donee at the time of the gift, it is generally considered to be presumptively void, and the burden of proof is on the donee to show the absolute fairness and validity of the gift, and

that it is free from the taint of undue influence, and this rule is the same at law as in equity."

Thus the burden of proof as to the bona fides and fairness of a transaction of this nature does not shift until the party alleging its invalidity has first shown the existence of confidential or fiduciary relations, or that there had been brought to bear upon the donor a dominant and controlling influence in behalf of the donee. The exception above noted to the general rule was dealt with very ably and clearly in Rich v. Hallman, *supra,* and in Peacock v. Du-Bois, 90 Fla. 172, 105 So. 32, and its application formed the basis of those decisions, which are quite familiar to the bench and bar of this State. The opinions in both these cases were written by the present Chief Justice. Thus in Rich v. Hallman, *supra,* it was said:

"In view of the age and infirmity of the donor, the confidential relation existing between the donor and the donee, the influence shown to have been exerted over the donor by the friends of the donee and by the donee herself and in view of other facts and circumstances peculiar to this case, we feel impelled to hold that the duty was on the donee to show that the assignment of the note and mortgage brought in question was bona fide and that it was not secured by undue influence, deceit or other improper means."

As I understand the able opinion rendered by Judge Adams in connection with his decree in this case, he did consider this question of undue influence and reached the conclusion that the evidence did not show undue influence, and that the only serious or meritorious question presented by the pleadings and the evidence was the question of the mental capacity of Frank Adams. In the beginning of

his opinion, he states that the bill of complaint alleged that at the time Frank Adams joined in the execution of the deed he was mentally incompetent and was subjected to undue influence, and that because of his helpless mental condition he was caused to yield to the force of such undue influence. His review of the testimony also indicates that he considered this question of undue influence. He quoted the definition of what constitutes undue influence as given in the case of *In re* Starr's Estate, 125 Fla. 536, 544; 170 So. 620, 630; which was itself a quotation from Peacock v. Du Bois, *supra*, most of which was set forth in the opinion of Mr. Justice THOMAS on the original hearing.

Judge Adams also dealt with the question of the alleged influence of Mrs. Frank Adams upon her husband in business matters, and held that the testimony of Mr. Walton "dissipated that charge." He also discussed the attitude of the children of Mr. Adams, other than Mr. L. S. Adams, who filed the bill as next friend and against whom no charges of undue influence were made), and the attitude of the Saunders children; also, that of W. H. Walton and Clarence Smith, sons-in-law of Frank Adams, and acquits them of any charge of bad faith or of trying to take advantage of Mr. Adams.

The opinion of the chancellor shows that after taking testimony for thirty days and listening to the arguments of able counsel, he had made a careful study of the evidence in the light of the authorities bearing on the case, and his final and conscientious conclusion that "Frank Adams was mentally competent at the time he executed the conveyance in question here, and thoroughly understood what he was doing, and that he did it in pursuance of his own volition and decision," shows in my opinion, that he considered and adjudicated both the mental capacity of Frank Adams and

his freedom from undue influence, and as stated in our original opinion, there was ample evidence to sustain his conclusions.

As I see it, our previous opinion and decisions affirming the final decree should be adhered to, and the petition for rehearing should be denied.

TERRELL, C. J., and WHITFIELD and THOMAS, J. J., concur.

BUFORD, J., dissents.

CHAPMAN, J., disqualified.

BUFORD, J.—(dissenting).—I think a rehearing should be granted because the opinion states:

"Applying these rules, it would seem that the bearer of the burden of proof with respect to undue influence would be Frank Adams, but a rather anomalous situation is produced by his repudiation of the act of his next friend in bringing the suit and the issues made by the petition of complainant, himself, and the answer of his representative. Even invoking the rule in its strictest sense and placing upon complainant this burden despite his petition, we cannot conclude that there is not a preponderance of evidence to support the finding of the chancellor that there was lack of this element in the transaction."

The burden of proof as to undue influence was not on the complainant and the authorities cited do not establish such rule.

The record shows also that the chancellor did not adjudicate the question of undue influence. On pages 4409, *et seq.*, the following appears in the chancellor's decree:

. "The Court has spent not only hours but days in the study of this record and authorities of law relating to the involved questions. The adjudication of the mental competency of

the defendant, Frank Adams, disposes of the case and makes unnecessary discussion or adjudication of the numerous other questions presented. After a most painstaking study of the record; after spending around a month personally hearing the testimony and observing witnesses; after hearing extensive arguments from able counsel; after reading the voluminous briefs also filed in the cause, the Court has come to the conclusion that the defendant Frank Adams was mentally competent at the time he executed the conveyance in question here, and that he thoroughly understood what he was doing and that he did it in pursuance of his own volition and decision. The record is replete with instance after instance of his transactions of important business matters and important business deals, his discussions of important business matters, his directions and instructions about various details of his business, and all these during the time when the complainant, himself, asserts he was tremendously weak mentally or during the period he was at his worst, and most of it during the time this suit was pending. There is an (old) adage, 'actions speak louder than words,' and while it is agreed that Mr. Adams is in a terribly helpless physical condition, and that because of his long suffering, he has indulged in considerable peculiar conduct, some of it apparently without any reasonable basis, and there is no doubt in the mind of the court that his mentality is not as strong as it was in his vigorous years, particularly so in view of the fact that he has been afflicted grievously from a physical standpoint for around twenty years, still considering the testimony within the purview of the rule laid down by our Supreme Court and giving effect to the many and numerous instances of his conduct which evidence a sound mind, and in view of the further fact that the complainant practically admitted his recognition of his father's

mental competency by his own dealings with him, the court has come to the firm conclusion that the complainant has not supported the allegations of his bill by preponderance of the proof."

The burden of proof was not on complainant to establish undue influence in a case of this sort by a preponderance of the evidence and, therefore, the record shows that if the chancellor may be presumed to have adjudicated the question of undue influence he did so applying an erroneous rule as to the burden of proof.