WARNER et al. v. FLORIDA BANK &
TRUST CO. AT WEST PALM BEACH
et al.

No. 11733.

Circuit Court of Appeals, Fifth Circuit.

April 10, 1947.

R. C. Alley, E. Harris Drew, C. Robert Burns and Elwyn L. Middleton, all of West Palm Beach, Fla., for appellants.

M. L. Mershon and W. O. Mehrtens, both of Miami, Fla., C. D. Towers and Cecil C. Bailey, both of Jacksonville, Fla., William Q. Cain, of Palm Beach, Fla., Jos. D. Farish, of West Palm Beach, Fla., and Raymond A. Scallen and Samuel H. Maslon, both of Minneapolis Minn., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This action was begun as a bill of interpleader by the Florida Bank & Trust Company at West Palm Beach, Florida, and the Florida National Bank of Jacksonville, Florida, as executors of the estate of Ellsworth C. Warner, deceased, to determine the ownership and rights to possession of a stock certificate for fifty-five shares of capital stock of Ellsworth Company, a Florida corporation, constituting the corpus of a trust created by Roslyn C. Warner, wife of Ellsworth C. Warner, some years prior to his death.

The trust agreement was executed by Mrs. Warner [1] at Minneapolis, Minnesota, on October 27, 1937, and conveyed the

---

[1] We shall refer to the surviving widow of Ellsworth C. Warner sometimes as the settlor, sometimes as the life beneficiary, and sometimes as Mrs. Warner, notwithstanding she had, prior to the filing of this suit, married Said-Ruete.

shares of stock in trust to her husband. The agreement provided that Roslyn Warner would receive the net income during her lifetime and upon her death the corpus remaining would go to certain children, grandchildren, and a daughter-in-law of her husband and their survivors.[2] The trust was subject to amendment or revocation during the life of the husband-trustee but not thereafter.[3] On May 10, 1940, at Palm Beach, Florida, the trust was amended so as to give the trustee, in the exercise of his discretion, authority to pay over to Mrs. Warner installments of principal determined by the trustee to be necessary or appropriate to her maintenance, welfare,

[2] We shall refer to the children, grandchildren, and daughter-in-law of Mr. Warner named in the trust agreement and their survivors sometimes as remaindermen and sometimes as remainder beneficiaries.

[3] The trust agreement is as follows:

"Trust Agreement
"Roslyn C. Warner Trust

"Roslyn C. Warner, of the City of Palm Beach, in the county of Palm Beach and State of Florida, hereinafter called the 'Donor', desiring to establish a Trust for the benefit of herself and the other beneficiaries hereinafter named, makes this Agreement this 27th day of October, 1937, with Ellsworth C. Warner, of Palm Beach, Florida, hereinafter called the 'Trustee'.

"The Donor hereby assigns, transfers and conveys to the Trustee Fifty-five (55) shares of stock of Ellsworth Company of Florida, a Florida Corporation, evidenced by Certificate No. 5, as a Trust Fund, to be held by the Trustee in Trust for the following uses and purposes:

"First: To pay the net income from the Trust Fund to the Donor, in convenient installments for her lifetime.

"Second: Upon the decease of the Donor this Trust shall terminate and one-twelfth (1/12) of the principal of the then Trust Fund together with all accrued and accumulated income shall be paid over discharged from this Trust to each of the following named persons or to their surviving heirs-at-law as such heirship may be determined by the laws of descent of the domicile of such deceased beneficiary: Harold L. Warner, of Minneapolis, Minnesota; Katherine Warner, the wife of said Harold L. Warner of Minneapolis, Minnesota; Maurice A. Warner, of Minneapolis, Minnesota; Katherine Mary Warner, Harold David Warner, Arthur Barnard Warner, Frank Annis Warner, and Thomas Livingston Warner, the children of Harold L. Warner and Katherine Warner; and Ellsworth Alfred Warner, Maurice Amos Warner, Jr., Henry Tuckwell Warner and Pamela Mary Warner, the children of Maurice A. Warner.

"Third: The Donor may from time to time deliver to the Trustee other and additional property which shall be taken and held upon the same trusts and be discharged in the same manner as the property herein mentioned. The delivery of such additional property, or evidence thereof, to the Trustee and the acceptance thereof, by the Trustee shall cause such additional property to be impressed with this Trust.

"Fourth: The Trustee in the exercise of his discretion may retain said corporate stock of record in the name of the Donor or may cause it to be transferred into his name as Trustee of this Trust or to his nominee without disclosing any fiduciary relationship. The Trustee shall be under no obligation to sell or exchange said stock except in the exercise of his judgment and discretion. Should said stock be sold the Trustee may reinvest the proceeds thereof in the exercise of his judgment in any property, real or personal, in which an individual could invest his own funds notwithstanding any rule of law statutory or otherwise limiting, defining or restricting the powers of the Trustee in respect to the investment of Trust Funds.

"Fifth: The Donor reserves the right to amend or revoke this Trust in whole or in part but only during the lifetime of her husband, Ellsworth C. Warner. Any amendment or revocation shall be in writing and executed with the formality of this instrument. After the decease of said husband of the Donor this Trust shall not be revocable and shall not be amendable.

"Sixth: Upon the decease, resignation, removal or inability of said Ellsworth C. Warner to act as Trustee hereunder, First National Bank and Trust Company of Minneapolis, a National Banking Association, of Minneapolis, Minnesota, shall become successor Trustee upon accepting this Trust in writing and delivering a copy of such acceptance to the then income beneficiary or beneficiaries.

"In Witness Whereof, said Donor and said Trustee have hereunto set their hands and seal the day and year first above written."

[Signatures]

and comfort.[4] After her husband's death Mrs. Warner claimed that the trust was invalid and demanded of the Florida Bank & Trust Company at West Palm Beach [5] that the stock be delivered to her. The remainder beneficiaries maintained the validity of the trust and demanded that its provisions be complied with. The executors thereupon filed the interpleader suit making the life beneficiary, the remainder beneficiaries, and the successor trustee parties defendant. The successor trustee filed an answer refusing to qualify as trustee and refusing to defend the trust. The suit thereupon became a contest between the life beneficiary and the remainder beneficiaries, the former asserting the invalidity of the trust, the latter, its validity.

After a trial on the merits the district court found that the trust agreement was valid and entered judgment: (1) decreeing the trust agreement in full force and enforceable, and the fifty-five shares of capital stock of Ellsworth Company to be owned and held in trust for the uses and purposes provided in the trust agreement; (2) allowing the interpleading executors $1,500 for their services, all court costs, and $7,500 for attorney's fees, and

taxing these costs and all other costs one half to the life beneficiary and one half to the remainder beneficiaries; and (3) fixing the fees of the guardian ad litem of the minor remaindermen at $7,500, to be paid by them. From this judgment all defendants appealed.

Mrs. Warner on her appeal asserts that the court below erred: (1) In upholding the trust agreement and decreeing the shares of stock to be owned and held in trust as provided in that agreement; (2) in increasing the allowance for the attorney's fees of the interpleaders in the final decree from $5,000 to $7,500; and (3) in taxing her with one half the allowances made the executors and one half all other costs. The remainder beneficiaries in their appeal assign as error the action of the court below: (1) in taxing the fees for the guardian ad litem against the minor remainder beneficiaries, and (2) in taxing one half the interpleaders' compensation, costs, and attorney's fees against the remaindermen.

Ellsworth C. Warner, prior to the fall of 1935, was a citizen and resident of Minneapolis, Minnesota. He amassed a fortune of several million dollars during

---

[4] The amendment is in these words:

"Amendment to Trust Agreement
of
Roslyn C. Warner Trust

"Whereas, Roslyn C. Warner, of the City of Palm Beach in the County of Palm Beach and State of Florida, heretofore, created a Trust with Ellsworth C. Warner, of Palm Beach, Florida, as Trustee, which Trust is evidenced by a written agreement dated October 27, 1937, and

"Whereas, said Donor reserved the right to amend or modify said Trust in any respect:

"Now Therefore, in the exercise of such right, but not to the exhaustion thereof, said Donor hereby amends the Trust Agreement by cancelling the first paragraph of trust uses and purposes, reading as follows:

" 'First: To pay the net income from the Trust Fund to the Donor in convenient installments for her lifetime.'

and substitute in lieu thereof the following:

" 'First: To pay net income from the Trust Fund to the Donor in convenient

installments for and during her lifetime. The Trustee in the exercise of his discretion may also pay over to the Donor, in cash or securities, installments of principal from time to time as the Trustee may determine to be necessary or appropriate for the ample maintenance, welfare and comfort of the Donor. This discretionary power shall be vested in any Successor Trustee. The determination of the Trustee as to the necessity, propriety and amount of such principal installments so withdrawn shall be final.'

"In All Other Respects, said Trust Agreement is hereby ratified, confirmed and approved.

"In Witness Whereof, said Donor and said Trustee have hereunto set their hands and seals this 10th day of May, 1940."

[Signatures]

[5] The stock and the original trust agreement and the amendment thereof were placed with this bank by Mr. Warner, subject to his order during his lifetime and his wife's order in case of his death.

his lifetime. He was twice married, Mrs. Roslyn Warner being his second wife. By his first marriage, which ended in divorce, he had four sons; two sons were left with their mother and lived with her; the other two remained with their father, and they and their children and the wife of one of them are the remainder beneficiaries named in the trust agreement. Roslyn Warner, prior to her marriage to E. C. Warner, had been married to a man who was engaged in the stock and grain brokerage business. During this marriage she acquired stock in her own name in the Household Finance Company. At the time she married Mr. Warner in 1930, her separate estate consisted of approximately $5,000, in addition to the Household Finance Company stock. She and Mr. Warner prior to their marriage executed an antenuptial agreement which provided that if he predeceased her she would receive ten per cent of his estate, but not less than half a million dollars or more than a million dollars.

Ellsworth Company, a Minnesota corporation, was formed by Mr. Warner in the fall of 1930 as a depository for his fortune. It was a family corporation, and out of three hundred outstanding shares he owned two hundred fifty-nine shares. In 1931, he gave Mrs. Warner a certificate for fifty-five shares of this stock. The Warners subsequently moved to Florida, and in 1936 a reorganization of the Ellsworth Company took place. Under the reorganization the assets of the Minnesota corporation were transferred to the Ellsworth Company, a Florida corporation, and the stockholders of the Minnesota corporation exchanged their stock for equal amounts of stock in the Florida corporation.

At the time the trust agreement was executed in Minneapolis, Minnesota, the certificate for the fifty-five shares of Ellsworth Company stock (Florida corporation) was physically in Mrs. Warner's possession in Minneapolis and was endorsed by her in blank and delivered to the husband-trustee. This stock remained in a safe at the home in Minneapolis until the fall of 1939, at which time this stock, together with other valuables of husband and wife, was carried from Minneapolis to Florida, and placed in a private safe in the Warner home in Palm Beach. The Warners first evidenced their intention to become residents of Florida in the fall of 1935, but, until their new home was acquired in Palm Beach, the record indicates that they spent a part of each year in Minneapolis, representing themselves, however, as residents of Florida.

Mrs. Warner contends that the trust agreement is presumptively void, as it was executed by her while a confidential relationship existed between her and her husband; that the burden of proof, therefore, is upon the remainder beneficiaries asserting the validity of the agreement to establish by clear and convincing evidence that she acted voluntarily in executing it and with full knowledge and understanding of the facts; and that this burden has not been met. The remainder beneficiaries, to the contrary, contend that Mrs. Warner executed the trust agreement and assigned and delivered the certificate of stock forming the trust res in Minneapolis, Minnesota, hence, the transaction was governed by the Minnesota law; that under Minnesota law no presumption against validity existed; and that, under Minnesota law, the burden of proof was upon Mrs. Warner to sustain the ground of the nullity alleged and relied on by convincing evidence. They further contend that, if it be held that the burden of proof was upon them, then that burden had been met, as the trial court has found, upon ample evidence, that no fraud or undue influence was practiced upon Mrs. Warner, and that in executing the trust agreement she acted voluntarily and with full knowledge of the facts.

In Florida at the time of the execution of the trust agreement and at the time of the execution of the amendment thereto, a wife could convey by gift her personal property to her husband and through him to others, but the confidential relationship existing between husband and wife placed upon him, and those claiming through him, the burden of showing that she acted wholly voluntarily and with full understanding of the facts. With respect to confidential relationship between parties to a contract, the Supreme Court of Florida, in Adams

v. Saunders, 139 Fla. 730, 191 So. 312, 316, said: "The general rule is that the person alleging that a contract, deed or gift was procured through the exercise of undue influence has the burden of proving that fact. But there is an exception to that general rule, to the effect that where the evidence clearly shows the existence of confidential or fiduciary relations between the parties, the burden of proof shifts, and it then becomes incumbent upon the party who procures the contract or who receives the deed or gift, to show affirmatively that the transaction was entered into fairly, openly, voluntarily, and with full understanding of the facts. See Black on Rescission of Contracts, section 253, and 12 R. C.L., 972, both of which authorities are cited in Rich v. Hallman, 106 Fla. 348, 143 So. 292. As was said in 12 R.C.L., 972, 'Where a confidential relation existed between the donor and the donee at the time of the gift, it is generally considered to be presumptively void, and the burden of proof is on the donee to show the absolute fairness and validity of the gift, and that it is free from the taint of undue influence, and this rule is the same at law as in equity.' "

 In Minnesota, where the trust agreement was executed, a wife could convey by gift her personal property to her husband, and through him to others with impunity. The marital relation imposed no restrictions. In that State the common-law doctrine of coverture was abolished by statute,[6] giving to a married woman the same legal existence as before marriage and equal rights in dealing with her personal property with her husband. The trust agreement, under Minnesota law, was presumptively valid and under that law the burden of proving invalidity for fraud, duress, or coercion was upon Mrs. Warner. See Berg et al. v. Berg, 201 Minn. 179, 275 N. W. 836; Bentson v. Ellenstein, 215 Minn. 376, 10 N.W.2d 282; Cf. Daniels v. Benedict, 8 Cir., 97 F. 367; Matthews v. Matthews, 24 Tenn.App. 580, 148 S.W.2d

3. As a general rule the law of the place of contracting determines whether the contract is void or voidable for fraud or duress.[7] If that law makes the contract binding, it is still open to the law of the place of performance to prohibit performance or to excuse nonperformance on account of illegality of performance by its laws.[8] The act of creating a living trust—and a trust created inter vivos is called a living trust —is the transaction of changing the title of the trust res from the settlor to the trustee.[9] With respect to capacity, 2 Beale, in Conflict of Laws, § 333.3, p. 1177, states the rule as follows: "The law of the place of contracting should govern capacity to contract in all cases, and indeed there is little authority to the contrary since many courts hold that capacity is governed by the lex loci contractus, even while they assert that some other law may govern the obligations and validity (in other respects) of the contract."

 In the creation of a trust estate such as the one before us, the first stage deals with passage of title of the trust res from the settlor to the trustee; the second stage deals with the administration of the trust. The transfer of a certificate of stock is governed by the law of the place where the paper is. Direction der Disconto-Gesellschaft v. United States Steel Corp., 267 U.S. 22, 45 S.Ct. 207, 69 L. Ed. 495. The validity of a trust of securities, including shares of stock, is governed by the law of the situs of the securities or the law of the place of the transaction.[10] Matters of administration are determined by the law of the situs or the seat of the trust, and the domicile of the trustee of intangible personal property including shares of stock is usually the seat of the trust. At the time the trust was created by Mrs. Warner, she and her husband and the certificate covering the shares of stock were physically in Minneapolis, Minnesota. The transfer of title, therefore, from Mrs. Warner to her husband as trustee under the trust agreement was governed by the law

---

6 These statutes appear in Minnesota Statutes for 1945 and M.S.A. in §§ 519.-01, 519.02, 519.03, and 519.06.

7 2 Beale, Conflict of Laws, "Contracts", § 347.1, p. 1225.

8 Ibid, § 347.2, p. 1227.

9 Ibid. § 294.1, p. 1018.

10 2 Beale, Conflict of Laws, § 294.3, p. 1019; Restatement, Conflict of Laws, § 294, (2).

of the State of Minnesota. At that time, however, Mrs. Warner and her husband were in the process of transferring their holdings from Minnesota to Florida where they had then recently taken up their abode with the intention of making it their permanent home. In the matter of the administration of the trust, it seems clear that the parties intended the situs or seat of the trust to' be in Florida, the domicile of the trustee, the domicile of the corporation issuing the shares of stock, and the domicile of the settlor.

It is only when a contract right is obnoxious to the public policy of the State that its courts are free to withhold their aid in the enforcement or the performance of a foreign contract in that State. Mere difference between the law of the forum and that of the foreign State does not of itself prevent enforcement of the foreign law or rights based thereon if such law is not against the public policy of the forum.[11] The fact, therefore, that under Florida law the trust agreement is presumptively void does not prevent a Florida court from applying the law of Minnesota, where the agreement was made and under which law the agreement is presumptively valid. Such difference in the law of Florida and that of Minnesota does not of itself prevent enforcement in Florida of the Minnesota contract and the rights based thereon, since the difference is not contrary to the prohibitory law of that forum.

Mrs. Warner, as a witness in her own behalf, in the court below testified that she had neither any recollection of executing the original trust agreement or the amendment thereto, nor any recollection of any discussion with her husband with respect thereto or in connection therewith. The trust officer of the bank in Minneapolis who prepared the original trust agreement, and in whose presence Mrs. Warner and her husband executed the same, testified that he furnished Mrs. Warner and her husband each with a copy of the agreement before it was executed, that he read it to them, and that he then analyzed and explained its contents; and that Mrs. Warner stated to him that the trust agreement was satisfactory to her, that it was all right, and that it was just as she expected it to be. Nowhere in the record does there appear any testimony of any false representation, of fraud, of duress, or of coercion made by Mr. Warner or by anyone else. The trust agreement is simple, easily understood, and contains no complicated language. The record shows Mrs. Warner to be a woman of intelligence. She accumulated property during her first marriage and during her second marriage, and at the time of the trial was conducting a brokerage business in which she had invested half a million dollars. The court below found that Mr. and Mrs. Warner had enjoyed a pleasant, agreeable, and happy married life, that he treated her kindly and considerately and was honest with her; that integrity and fair-dealing characterized his business actions so far as she was concerned; and that "Neither E. C. Warner nor anyone else exercised any fraud, actual or constructive, or any duress or coercion upon Mrs. Warner in the matter of the execution of the trust or the amendment thereto * * *." These findings are amply supported by the record. We think, therefore, that the burden of proof was upon Mrs. Warner under the lex fori contractus to show fraud or coercion or duress. If we are wrong in this, and the burden according to the lex fori was upon the remainder beneficiaries to show that she acted voluntarily and with full knowledge of the facts, we agree with the court below that this burden has been met, because neither was fraud, actual or constructive, exercised upon Mrs. Warner, nor was any fraud, duress, or coercion brought to bear in the matter of the execution of the trust.

We find no support, however, for the action of the trial judge in increasing the attorney's fees of the interpleading executors in the final decree from $5,000, previously fixed by him upon discharging the executors from responsibility for the subject matter of the suit, to $7,500. The allowance by the former decree at the time of the discharge of all court costs, $5,000 for fees for attorneys, and $1,500 for compensation to the interpleaders, was ample.

---

[11] Restatement, Conflict of Laws, § 612, comments a and b.

The bill of interpleader is not complicated, and upon being discharged the interpleaders had no other interest or responsibility in connection with the litigation. In this respect the judgment of the lower court should be amended.

 The contention of the remainder beneficiaries that the court below erred in taxing the fee for the guardian ad litem against the minor remaindermen and in taxing one half the interpleaders' compensation, costs, and attorney's fees and of all other costs to the remaindermen, is without merit. The remaindermen were parties to adversary litigation. As a general rule each party to adversary litigation is required to pay his own counsel fees. The argument that the remaindermen, upon the refusal of the successor trustee to qualify, were called upon to defend and establish the validity of the trust, hence were entitled to have their attorney's fees assessed against the trust estate as would the successor trustee had it qualified and defended the suit, finds no support in law. The counsel fees of a trustee called upon to defend a trust he is administering certainly should not be taxed personally against him, as all matters done by him are in a representative capacity, with respect to which he is without personal interest. Under such conditions his counsel fees are rightfully charged against the trust estate. Here the remaindermen were called upon to litigate rights with respect to their own interests. In defending the legality of the trust and the ownership of the trust estate of the fifty-five shares of capital stock of the Ellsworth Company, the remaindermen were defending a property right acquired by them under and pursuant to the trust agreement. Had one of the remaindermen defended the rights of himself and all other remaindermen and secured to himself and all other remaindermen the property rights in question, an equity court in the exercise of its equitable jurisdiction would, as a general rule, prorate the costs, including attorney's fees, incurred among all the remaindermen. 14 Amer.Jur., p. 47, "Costs", § 74. But that feature is not present in this litigation.

The judgment appealed from is affirmed except as to the attorney's fees in the sum of $7,500 allowed the executors. The attorney's fees are reduced to $5,000, as fixed in the decree at the time the executors were discharged from responsibility, and as so amended the judgment is affirmed. The cost of appeal is assessed one half to Mrs. Warner and one half to the remaindermen.

Amended and affirmed.