136 So.2d 238 (1961)
Walter CRANE, Appellant,
v.
Irene M. STULZ, Incompetent, and the First National Bank in Fort Lauderdale, Florida, As Guardian of the Property of Irene M. Stulz, Incompetent, Appellees.
No. 2219.
District Court of Appeal of Florida. Second District.
December 27, 1961.
Rehearing Denied January 17, 1962.
*239 Cecil T. Farrington, Fort Lauderdale, for appellant.
Kirk Sullivan, West Palm Beach, Sutton, James & Singer, Fort Lauderdale, for appellees.
WHITE, Judge.
Appellant Walter Crane was plaintiff and counter-defendant in a suit to quiet title to land previously conveyed to him by a client, Irene M. Stulz, whose property guardian at the time of suit was the appellee-defendant First National Bank in Fort Lauderdale. The chancellor declined to quiet the title as prayed, but on the counterclaim he directed that Walter Crane convey back the land in question and also restore to the estate of Irene M. Stulz, with interest, the sum of $16,733.75 which purportedly had been given to him by Irene M. Stulz.
On July 16th, 1957 Irene M. Stulz was adjudicated incompetent and the First National Bank in Fort Lauderdale was appointed guardian of her property. It was discovered that on September 30th, 1955 Irene M. Stulz apparently had made a gift of $16,733.75 to Walter Crane and also, on January 26th, 1956, had conveyed to him a certain lot or parcel of land located in Palm Beach County, Florida. Upon the insistence of Leo Barian of California, the brother and sole heir apparent of Irene M. Stulz, the guardian bank demanded that Walter Crane reconvey the land and restore the $16,733.75, with interest, to the estate of Irene M. Stulz.
Walter Crane responded by instituting suit to quiet title to the land in question. The guardian filed a counterclaim to set aside both the deed and the cash gift, alleging that there was a confidential attorneyclient relation between the parties at the time of both transactions, that Irene Stulz was incapable of forming a donative intent and that, moreover, the gifts were the result of undue influence.
The final hearing extended over a period of five days. Numerous witnesses testified and many exhibits were offered and received in evidence. Upon consideration the chancellor, as stated, dismissed the complaint and found for the counterclaimant, requiring Walter Crane to reconvey the land and also to return $16,733.75, with interest, to the Irene Stulz estate.
Walter Crane had been handling the business and personal affairs of Irene Stulz as her attorney, friend and confidant since early in 1947. She was then about seventy years of age. She had been referred to him by a bank where she had made inquiry concerning the probate of her late husband's will. Walter Crane thereafter devoted much time and attention to his client's interests. Over a period of ten years he appears to have gone far beyond the call of professional duty to serve her. He accordingly urged in the tral court and now urges in this court that his years of faithful, uncompensated services provided a full justification for the now disputed gifts.
Walter Crane, while not denying the gratuitous character of the particular transactions *240 here involved, delineated many services rendered by him to Irene Stulz with respect to such matters as traffic offenses, banking, insurance, taxes, mortgages, correspondence, purchase of automobiles, title searches, locating places for Irene Stulz to live and taking numerous trips with her to New Jersey, Philadelphia, Colorado, Texas, North Carolina and Ocala, Florida. He stated Irene Stulz could well afford these particular gifts, that she had made similar generous gifts to others. He pointed out that the conveyance of the land was through another attorney without his knowledge and that the $16,733.75 was derived from the proceeds of a sale of stock and was intended to provide for the education of his children, particularly the eldest who was Irene Stulz's godson.
Without detailing the testimony of the witnesses who testified with reference to the mental condition of Irene Stulz, we note that at the time of final hearing she was not aware of the identity of her friends and acquaintances and did not know her own name. It was impossible for her to testify. A psychiatrist testified that she was afflicted with a chronic brain syndrome which had gradually resulted from arteriosclerosis. In view of the involvement of confidential relations, it was not incumbent upon the counterclaimants to show that Irene Stulz was incompetent at the time the gifts were made. There was, nevertheless, substantial testimony tending to show that she was in fact disoriented and mentally unbalanced prior to her adjudication of incompetency and prior to and at the time of the gifts in question. A number of expert and lay witnesses who observed her over a period of years expressed the opinion that she was mentally incompetent at the time of the purported gifts on September 30, 1955 and January 26, 1956.
Early in their relations as attorney and client Walter Crane received payment for his services in connection with the administration of the estate of Irene Stulz' deceased husband. It also appears that during this early period Irene Stulz executed a will making Walter Crane a beneficiary to the extent of one-half of her residuary estate. This circumstance may well have been a contributory cause of the subsequent dealings of the parties in a loosely gratuitous manner rather than on a sound business basis. It does not appear that Walter Crane ever agreed to render legal and personal services without charge. He simply never billed her therefor. In his own language "This thing just grew, snowballed." Thus the ultimate tangled web resulted not from wilful deception but from a professionally unwise and impolitic manner of dealing.
The import of the chancellor's findings was that Walter Crane failed to establish by clear and convincing evidence, as required by law, the fairness of the particular transactions here involved. Walter Crane complains that the chancellor, while in terms recognizing his kindness and extensive services to Irene Stulz, overlooked and failed to take into account the value of such services. He insists that the gifts did not reflect unfair dealing or unprofessional conduct on his part and that the evidence affirmatively disclosed that they were voluntarily made by a competent donor and were well deserved.
In stating his points on appeal the appellant set forth his version of the case in a considerable number of divisions and headings. In essence, however, the questions for determination may be condensed broadly as follows:
1. Was it error to require appellant Walter Crane, in view of the evidence, to reconvey the land and restore the gift of cash?
2. Was the added counterclaim for recovery of the cash, as distinguished from the land, joinable as a permissive counterclaim?
3. Was it error to charge appellant Walter Crane, the unsuccessful plaintiff, with the cost of depositions obtained by defendant-counterclaimants *241 but not placed in evidence or used appreciably during the trial?
If a confidential or fiduciary relation is shown to exist between a donor and a donee, the gift is presumptively invalid and the burden devolves upon the donee to show the fairness and validity of the gift. Adams v. Saunders et al. 1939, 139 Fla. 730, 191 So. 312; Rich v. Hallman, 1932, 106 Fla. 348, 143 So. 292. The law takes a specially skeptical view of transfers and "gifts" from client to attorney. The pertinent rules are well reasoned and well settled. We deem it unnecessary therefore to dwell at length on the practical and ethical considerations which impose a heavy burden upon an attorney, when challenged, to establish the complete rectitude of his conduct in accepting a gratuitous transfer of property from a client.
In Bolles v. O'Brien, 1912, 63 Fla. 342, 59 So. 133, 134, the Supreme Court of Florida said:
"Independent of all fraud, if an attorney shall take what is in substance a gift from his client, while the relation subsists, though the transaction may be, not only free from fraud, but entirely moral in its nature, the law casts upon the attorney the burden of showing that the transaction was voluntary and fair on the part of the client, and that he acted with full warning and perfect knowledge of the consequences of his act. Contracts between attorney and client, when not entirely equitable and fair, may be voidable at the election of the client. The whole burden of establishing by clear and convincing evidence the fairness of an agreement purporting to convey a property right from a client to his attorney, and that it was made upon full and adequate consideration, is cast upon the attorney."
Gerlach v. Donnelly, Fla. 1957, 98 So.2d 493, 498, involved certain notes given by a client to an attorney. The Supreme Court of Florida said:
"There is no relationship between individuals which involves a greater degree of trust and confidence than that of attorney and client. The relationship has its very foundation in the trust and confidence the client reposes in an attorney selected to represent him. The attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity. Business transactions between attorney and client are and always ought to be subject to the closest scrutiny because of this underlying relationship. It is an ancient and firmly established principle of the law that the burden is placed upon an attorney to establish by clear and convincing evidence the fairness of an agreement or transaction purporting to convey a property right from a client to his attorney. Moreover, the burden is cast upon the attorney in transactions of this kind to establish that such was made upon full and adequate consideration."
In Brass v. Reed, Fla. 1953, 64 So.2d 646, 648, the Court said:
"The only difference in dealings between attorney and client and other people is that the relationship between attorney and client is very intimate, close, personal and confidential, and an attorney is required to exercise in all his dealings with his client a much higher standard than is required in business dealings."
The foregoing principles were implicit in the well composed decree wherein the chancellor correctly found and adjudged, from a consideration of all the evidence, that Walter Crane failed to establish by clear and convincing evidence the fairness of the "gifts" as such. We are convinced that the chancellor viewed the *242 case in proper perspective. He noted that Walter Crane had performed valuable services for which he conceivably might be entitled to compensation by conventional and orthodox means. In considering the issues of the fairness and validity of the gifts, the chancellor also had before him the significant circumstance that Walter Crane knew that he was a named beneficiary in the will of Irene Stulz equally with her brother and sole heir apparent. We frankly see no basis for disturbing the chancellor's findings of fact and his conclusion of law on the issue of the validity vel non of the transactions in question.
The next contention of the appellant is that the chancellor erred in permitting the appellees, in the counterclaim with respect to the land, to challenge also the gift of cash. In view of the suit to quiet title, the counterclaim to void the deed was compulsory under Rule 1.13(1) Florida Rules of Civil Procedure, 30 F.S.A. Although the transfer of the cash was a separate transaction, the pending suit was between the same parties and involved the same factors even though one transaction pertained to land and the other to money. We accordingly hold that the alleged invalidity of the gift of money was properly pleaded as a permissive counterclaim under Rule 1.13(2).
The final point for determination is whether or not there was error in charging the losing party with the entire cost of depositions in view of the contention that certain depositions were not introduced in evidence and not used by prevailing parties at the trial. The plaintiff-appellant was taxed with costs aggregating $1,066.83. The appellees concede that certain depositions were used only for discovery and that some were not introduced in evidence. They state, however, that the particular depositions in question were used in preparation of their case and in framing questions to witnesses on cross examination at final hearing. The appellant asserts that he was deposed three times for discovery and that these depositions were not used as evidence nor employed in the examination of witnesses. It is also noted by the appellant that a Dr. Milton N. Camp testified on final hearing and that no move was made by defendant-counterclaimants to use his pre-trial deposition; that of the several depositions in question only one was used in framing two questions.
The trial court has broad discretion in the taxing of costs in civil actions. Florida Statutes § 58.13, F.S.A. This is, however, a legal discretion which should be compatible with the requirement that costs of litigation be kept within reasonable bounds. Wilson v. Rooney, Fla.App. 1958, 101 So.2d 892. In Emigh v. Tinter, Fla. App. 1959, 108 So.2d 913, 914, the court disallowed as taxable costs the expenses of procuring certain depositions. The court said:
"The record before us is devoid of any showing * * * that all the depositions for which costs have been allowed * * * served a useful purpose, nor does the judgment awarding costs contain any findings by the trial judge to that effect."
In the present case it appears that the taxing as costs of some of the expenses of the depositions was improper. As to those depositions used only for discovery purposes and not clearly employed on final hearing, the costs should not have been taxed against the opposing party. The cause, therefore, is remanded for the sole purpose of reassessing and taxing the costs. In all other respects the decree appealed is affirmed.
Affirmed and remanded.
SHANNON, C.J., and SMITH, J., concur.